**In re George Edward CAREY, aka Edward G. Carey and Deanna Lee Carey, Debtors.**

**Bankruptcy No. 80–01368–M.**

United States Bankruptcy Court, S. D. California.

Feb. 20, 1981.

---

MEMORANDUM OPINION REGARDING REIMBURSEMENT TO SECURED CREDITOR OF ATTORNEYS FEES AND OTHER COSTS

I

JAMES W. MEYERS, Bankruptcy Judge.

This controversy brings into question the availability of attorneys fees provided for in a secured instrument, to a creditor who has brought suit under the provisions of the United States Bankruptcy Code ("Code"). Acme Investment Company ("Acme"), a secured creditor of the debtors herein, brought suit against the debtors for relief from the automatic stay provisions of the Code. A final hearing was never held in that action, however, as Acme's underlying obligation was repaid by the debtors pursuant to a Court approved sale of the property which was Acme's collateral.

The question of who would pay for Acme's attorneys fees and costs was reserved for a later determination. To that end, Acme submitted its application for attorneys fees and costs.[1] The debtors objected to an allowance of any of the requested expenses. A hearing then was held on this matter, at which time the questions presented were taken under submission by the Court. Having reviewed the arguments presented by the parties, the Court has concluded that Acme will be allowed attorneys fees and costs as requested.

II

FACTS

On May 23, 1980, the debtors filed their joint petition under Chapter 11 of the Code. Among their assets was a parcel of commercial real estate situated in Vista, California. The land was subject to a note and second deed of trust in favor of Acme in the amount of $80,000. This obligation was

James McCafferty, San Diego, Cal., for debtors.

E. Mac Amos, McWilliams, Amos & Curnow, San Diego, Cal., for Acme Inv. Co.

---

1. At controversy here is the amount of $3,659.50 in attorneys fees and $1,153.67 in related costs.

fully due and payable on February 9, 1980, and was seriously in default when the debtors sought relief in this Court.

On June 24, 1980, Acme filed its complaint for relief from the automatic stay.[2] The debtors answered and a preliminary hearing was held before another judge of this Court, at which time it was ordered that the stay would remain in effect pending a final hearing under Section 362. *See* 11 U.S.C. § 362. The final hearing date was then continued.

During this period of time, the debtors were involved in negotiations for the sale of the property which was subject to the Acme obligation. In doing so, the debtors were attempting to fund their proposed plan of reorganization. Their efforts were successful and on September 25, 1980, an order was entered confirming the sale of the property. Acme was then paid all amounts owing on its note and trust deed except for attorneys fees and related costs. The practical effect of this, as Acme candidly admits, was to render its relief from stay complaint moot. On October 17, 1980, at the continued final hearing under Section 362, counsel for Acme announced that its debt had been paid, and the matter was taken off calendar. No further action has been taken regarding the complaint.

## III

## DISCUSSION

### A. *Attorneys Fees*

Acme supports its claim for attorneys fees on the principal ground that it is entitled to fees as part of its secured debt. Specifically, reliance is placed on Section 506(b) of the Code which provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest

on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose. 11 U.S.C. § 506(b). This section, along with certain statements in the legislative history, are said to support the proposition that state law concerning attorneys fee provisions in secured instruments is no longer controlling in bankruptcy matters. It is Acme's view that fees incurred in bringing any action on a secured claim in Bankruptcy Court are compensable regardless of how the same action would be treated in state court, provided that the agreement between the parties calls for such payment.

Furthermore, Acme points out that the deed of trust requires that all costs and fees be paid in, among other things, an action to enforce the obligation. Moreover, it maintains that its actions were successful in obtaining payment for its client.

The debtors find themselves unable to agree with this reasoning and have objected to the requested fees and costs on a number of grounds. Basically, they argue that attorneys fees for a secured creditor cannot be recovered under Section 506(b) as part of an allowed secured claim. The debtors' basic difference with Acme lies in the fact that they would construe Section 506(b) to incorporate state law on the availability of attorneys fees. In California, that would include consideration of California Civil Code § 1717. This section provides, in part, that:

> In any action on a contract, where such contract specifically provides that attorneys fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorneys fees in addition to costs and necessary disbursements.

> \*   \*   \*   \*   \*   \*

---

2. The promissory note held by Acme provided, *inter alia*, that: "If action be instituted on this note I [the debtors] promise to pay such sum as the Court may fix as attorneys fees." Acme's

deed of trust also provided that the debtors agreed to "pay all costs and expenses . . . and attorneys fees . . . ." incurred in various actions relating to the trust deed.

As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

Cal.Civ.Code § 1717 (West). The debtors contend that since Acme never obtained a final judgment lifting the automatic stay, it cannot be considered a "prevailing party" under Section 1717. And finally, the debtors challenge the reasonableness of the attorneys fees claimed by Acme, charging that the number of hours claimed and the hourly rates charged are excessive.

In order to resolve these questions it is necessary to refer to the tangled legislative history of Section 506(b).

In the original version of the House bill, H.R.8200, Section 506(b) would have allowed attorneys fees and costs on an oversecured claim as provided in the parties' agreement but only "to the extent collectible under applicable law . . . ." *See* H.R. 8200, 95th Cong., 1st Sess. § 506(b) (1977). In the House Report on H.R.8200 this language was said to codify "current law by entitling a creditor with an oversecured claim to any reasonable fees, costs or charges provided under the agreement under which the claim arose." *See* H.R.Rep. No.95–595, 95th Cong., 1st Sess. 356–57, U.S.Code Cong. & Admin.News 1978, 5787 (1977).

The Senate's version of Section 506(b), as contained in its bill, S.2266, was somewhat different. It too provided for an allowance of fees and costs on an oversecured claim, however, it merely required that these charges be "provided [for] under the agreement . . . ." *See* S.2266, 95th Cong., 2nd Sess. § 506(b) (1978).[3] In the Senate Report, this language was also construed to keep existing law intact. *See* S.Rep.No.95–989, 95th Cong., 2d Sess. 68 (1978). When compared to the House proposal it should be noted that this bill eliminated the need to refer to other "applicable law".

This situation apparently evidences some confusion as to the status of existing law when these Congressional reports were drafted. Both the House and Senate Reports give the same statutory construction to provisions which are quite differently worded, but offer no explanation of what was conceived to be the "existing law".

Upon review of the caselaw, however, it is clear that state law has been paramount in determining allowances of attorneys fees under secured instruments. This view was clearly set forth in *Security Mortgage Co. v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928). There, Mr. Justice Brandeis observed that the validity and construction of a lien or contract for attorneys fees presents a question of state law. 278 U.S. 149, 153–54, 49 S.Ct. 84, 85. This proposition has since been consistently adhered to by the federal courts in caselaw developed under the former Bankruptcy Act. *See In re Bain*, 527 F.2d 681, 685 (6th Cir. 1975); *Quaker Oats Company v. Burnett*, 289 F.Supp. 283, 286 (E.Tenn.1968); *In re Crafty Fox, Ltd.*, 5 B.R. 820, 821 (W.D.Va. 1980).[4]

Both the House and Senate Reports point to the conclusion that at that period in the legislative evolution of the Code, Congress certainly did not intend to effect a change by supplanting state law. Certain remarks made during the concluding Congressional

---

**3.** It was this version of Section 506(b) which was enacted as part of the Code. *Compare* S.2266, 95th Cong., 2d Sess. § 506(b) (1978) *with* 11 U.S.C. § 506(b). See also 3 Collier on Bankruptcy ' 506.05 (15th ed.); 3 Bk.L.ed. § 21.52.

**4.** Under an application of California law, for example, Acme would *not* be entitled to attorneys fees. Acme's note and trust deed establish a unilateral right to fees in its favor. Due to this, California Civil Code § 1717 must be read into these provisions thereby creating a reciprocal right to attorneys fees on behalf of the debtors. *See e. g., Associated Convalescent Enterprises v. Carl Marks & Co., Inc.*, 33 Cal.App.3d 116, 120-21, 108 Cal.Rptr. 782 (1973). Section 1717 would require Acme to show that it was the "prevailing party" in its stay action. This it could not do, though, as no final determination was ever made in that case, and the California courts have required that a "prevailing party" be one who has received a final judgment resulting from a judicial determination. *See e. g., International Industries, Inc., v. Olen*, 21 Cal.3d 218, 221-25, 145 Cal. Rptr. 691, 577 P.2d 1031 (1978).

debates on the Code, however, indicate that Congress subsequently clarified its intentions on the subject. These late remarks indicate that the Senate's version of Section 506(b) was adopted with the specific intention of overriding any state law which would otherwise deny an award of attorneys fees to an oversecured creditor with a contractual right to reimbursement. Representative Edwards, the floor manager of the bill in the House of Representatives, observed that:

> Section 506(b) of the House amendment adopts language contained in the Senate amendment and rejects language contained in H.R.8200 as passed by the House. If the security agreement between the parties provides for attorneys fees, it will be enforceable under title 11 *notwithstanding contrary law* . . . .

124 Cong.Rec.H. 11095 (daily ed. Sept. 28, 1978) (emphasis added). Senator DeConcini, who managed the bill in the Senate, echoed this intention in his remarks before the Senate just prior to final enactment. *See* 124 Cong.Rec.S. 17411 (daily ed. Oct. 6, 1978).

■ These remarks must be taken as the most reliable and persuasive indication of Congressional intent regarding the meaning and effect of Section 506(b). *See* K. Klee, *Legislative History of the New Bankruptcy Code*, 54 Am.Bankr.L.J. 275, 294–95 (1980). They make it quite clear that attorneys fees and costs that are agreed to by contracting parties are to be allowed an oversecured claimant regardless of contrary law. Therefore, Acme's note and trust deed do provide a basis for the recovery of attorneys fees under Section 506(b).

■ Finally, the observations of Senator DeConcini and Representative Edwards clarify an otherwise questionable and confusing legislative intent, and show a Congressional desire to insure that the contractual expectations of secured creditors will not be ignored by bankruptcy courts when there is an excess of collateral securing their claims.[5] In recognizing this special protection for secured creditors, it must be remembered that the Court possesses inherent discretion to review any award of fees under Section 506(b) for potential abuse of this right. In doing so, the Court would consider such factors as whether the attorneys fees and costs were incurred in an action reasonably calculated to protect the creditors' rights.[6]

### B. *Costs*

■ Acme has also requested reimbursement for certain costs incurred in their stay action. The debtor has objected to payment of these costs, placing reliance on the case of *In re B & J Harris, Inc.*, 5 B.R. 686, 6 B.C.D. 854 (Bkrtcy.M.Fla.1980). This decision purports to establish the general rule that costs will not be taxed in favor of creditors who have brought relief from stay actions.

Acme disagrees with this, again emphasizing Section 506(b) of the Code and the wording of the attorneys fees provision in its trust deed. Moreover, Acme seeks to distinguish the *Harris* case on the grounds that it does not involve Section 506(b), and that the court there did not consider fee provisions in secured instruments.

Acme is correct in its assessment of the *Harris* case and its impact on the particular facts before this Court. There is no indication that the court in *Harris* dealt with the application of Section 506(b) to a provision in a deed of trust. Moreover, insofar as Bankruptcy Rule 754(b) leaves the taxation of costs to the discretion of the court, *see*

---

**5.** The Court recognizes the irony of using the Senate's language as it was originally drafted with the stated intent of maintaining the *status quo* and yet it was finally used as the vehicle to effect substantial change.

**6.** This responsibility is really only a facet of the larger question the Court must consider when it assesses whether the fees and costs requested are "reasonable" under the section. *See* 11 U.S.C. § 506(b). With respect to the debtors' objection to the reasonableness of the claimed fees, the Court finds, based on the evidence before it, that the fees sought are reasonable in nature. *See generally In re Foster Iron Works, Inc.*, 3 B.R. 715, 717 (S.D.Tex.1980) (general factors to consider).

Bankruptcy Rule 754(b) (Advisory Committee Note), it must be considered overridden here by the mandatory language of Section 506(b). Congress has made it clear that an oversecured claimant "shall be allowed" costs as provided for in the parties' agreement. *See* 11 U.S.C. § 506(b). Accordingly, the *Harris* decision will not be followed by this Court, and Acme will be allowed to recover its costs.

IV

CONCLUSION

Acme's request for attorneys fees and costs is granted in its entirety. Counsel for Acme will prepare an appropriate order within ten (10) days of the date of this opinion.