**In re LeMARQUIS ASSOCIATES, a limited partnership, Debtor.**

**PASATIEMPO PROPERTIES, a general partnership, Pacific Loan Management, a California corporation, Plaintiffs,**

**v.**

**LeMARQUIS ASSOCIATES, a limited partnership, Does One thru Ten, Defendants.**

**Bankruptcy No. 282–04836–D–11.**

**Adv. No. 283–0818.**

United States Bankruptcy Court, E.D. California.

April 17, 1986.

Thomas A. Jenkins, Cupertino, Cal., for plaintiffs.

Jim B. Dismukes, Inc., by Joel Drum, Sacramento, Cal., for debtor/defendants.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Chief Judge.

### FACTS

Le Marquis Associates (Le Marquis), a limited partnership, was formed in 1981 in

order to purchase an apartment complex located at 935 Johnfer Street [sic] in Sacramento, California. On January 8, 1981, Le Marquis executed a promissory note in the amount of $600,000 in favor of the seller, Pasatiempo Properties (Pasatiempo). The total amount of the promissory note included the unpaid balance of five other promissory notes secured by five senior deeds of trust against the apartment complex. The note was due and payable on or before August 1, 1982. Le Marquis also executed an all inclusive deed of trust to secure the promissory note. The deed of trust wrapped around the five senior deeds of trust.

When Le Marquis failed to pay the note by the due date, Pasatiempo recorded a notice of default and election to sell on August 9, 1982. And, on September 17, 1982, Pasatiempo filed a complaint against Le Marquis for specific performance and appointment of a receiver in Sacramento County Superior Court. The superior court case was settled on October 29, 1982 when the parties entered into a stipulation that Le Marquis would pay to Pasatiempo a portion of the monthly rents collected.

On December 3, 1982, three days prior to the trustee's sale, Le Marquis filed a chapter 11 petition. The sole asset of the debtor was the apartment complex. Pasatiempo filed a complaint for relief from the automatic stay in this court on January 14, 1983. The court denied Pasatiempo's request for relief at the hearing on February 28, 1983. Subsequently, Pasatiempo filed a second complaint for relief from the automatic stay on April 13, 1983. The second complaint was nearly identical to the first except that the second complaint sought the additional relief of sequestration of rents. At the hearing on the second complaint the court ordered the parties to file briefs on the sequestration issue. Thereafter, the matter was argued orally and taken under submission.

The debtor's disclosure statement was approved on June 29, 1983. However, before the hearing on confirmation of the plan, the debtor sold the apartment complex with court approval for a purchase price of $1,075,000. The court entered an order confirming sale on August 15, 1983. The order provided that all encumbrances of record would be paid from the sales proceeds prior to the close of escrow. The amounts due Pasatiempo under its note and deed of trust were paid pursuant to the order. In addition, Pasatiempo placed a demand against the escrow for the payment of its attorney's fees in the amount of $14,001.65. Pasatiempo also demanded $7,207 as payment for its foreclosure related charges, costs, and fees. The debtor objected to these demands as being excessive.

The issue of Pasatiempo's demand for attorney's fees and foreclosure charges was briefed by the parties and oral argument occurred on October 21, 1983. At the conclusion of the hearing this court denied Pasatiempo's claim for attorney's fees and reduced its claim for foreclosure charges to $2,967. In one of the findings this court stated that neither the note nor deed of trust authorized an award of attorney's fees for the services performed by Pasatiempo's counsel. Pasatiempo then appealed the order to the district court.

On August 14, 1985, the district court issued an order which affirmed this court's award of foreclosure charges to Pasatiempo. As to the attorney's fees, however, the district court remanded the case to this court "to reconsider its previous decision in light of [11 USC] section 506(b) and the cases interpreting it." The district court order specifically asks that this court determine whether any pre or post petition services rendered by Pasatiempo's counsel, Thomas A. Jenkins, Esq., were covered by the attorney's fees provision of the note or deed of trust.

A hearing on the order remanding the case to this court occurred on January 21, 1986. At the conclusion of the hearing the court requested that the parties prepare and submit letter briefs regarding the effect of *Johnson v. Righetti,* 756 F.2d 738 (9th Cir.1985) on the issues in this case.

The parties filed their briefs and the matter was submitted.

## DISCUSSION

The starting point for resolving this dispute begins with 11 U.S.C. § 506(b) which states,

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Turning to the deed of trust executed by Le Marquis, it states that the trustor agrees as follows:

> (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including costs of evidence of title and attorney's fees, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

The promissory note provides,

> If any party to this Note or any assignee of any party hereunder shall bring an action in any court of competent jurisdiction to enforce any covenant or condition of this Note, including any action to collect any payments required hereunder, it is hereby mutually agreed that the prevailing party shall be entitled to reasonable attorney's fees and all costs and expenses in connection with said action, which sums shall be included in any judgment or decree entered in such action in favor of the prevailing party.

It is undisputed here that Pasatiempo was an oversecured creditor and that both the promissory note and deed of trust contain provisions for attorney's fees. What is disputed is whether the services performed by Pasatiempo's counsel are cover-

ed by the provisions of the note or deed of trust.

It is well-settled that the bankruptcy court may inquire into whether the services rendered by the creditor's attorney are within the scope of services covered by the agreement. *In re Carey*, 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981); 3 *Collier on Bankr.* ¶ 506.05 at 506–48 (15th ed. 1985). In addition, the court may determine if the services rendered were reasonably required under the circumstances. 3 *Collier on Bankr., supra*, at 506–49.

■ An attorney employed by a trustee or a debtor in possession pursuant to 11 U.S.C. § 327(a) may be compensated from the estate under § 330(a)(1) for "actual, *necessary* services" (emphasis added). This court holds that a creditor's attorney who seeks compensation from the estate under § 506(b) similarly must show that the services performed were necessary. *Contra In re Dominguez*, 51 B.R. 171, 173 (Bankr.C.D.Cal.1985) (secured creditor with a right to costs and attorney's fees under § 506(b) receives more favorable treatment than a bankruptcy fee applicant). This holding is consistent with the theme throughout the Code that the bankruptcy court should closely scrutinize fee applications. With this holding in mind the court will analyze the pre- and post-petition services rendered by Pasatiempo's counsel.

### Prepetition Services

■ Prior to the filing of the chapter 11 petition by Le Marquis, Pasatiempo filed a state court complaint to have a receiver appointed. The filing of the complaint led to a stipulation in which Le Marquis agreed to pay to Pasatiempo a portion of the rents collected.

Upon reconsideration, the court finds that Pasatiempo's efforts to have a receiver appointed fall within the attorney's fees provision of the note. By its state court action, Pasatiempo attempted to collect payments due to it under the note. Since Pasatiempo had already recorded a notice of default, the appointment of a receiver during the reinstatement period was the

only other step Pasatiempo could take to collect what was due.

The billing statement submitted to this court by Thomas A. Jenkins shows that Pasatiempo incurred $1,235 in attorney's fees for the state court action. This amount is reasonable for the services performed by Jenkins and the court orders the debtor to reimburse Pasatiempo this amount.

*Post petition Services*

The court has reviewed again the list of services performed by Jenkins post petition. As noted above, Jenkins filed two complaints for relief from the automatic stay on behalf of Pasatiempo. However, the court never granted Pasatiempo relief on either complaint. The list of services also shows that Jenkins performed many services which related to the debtor's disclosure statement and plan of reorganization. The list of services also indicates that Jenkins made numerous phone calls and wrote several letters to his client, the debtor's attorney, and another creditor. Jenkins also filed a proof of claim on behalf of his client.

In determining whether any of the services performed by Jenkins were necessary to protect the security or the rights and powers of Pasatiempo, one significant fact exists: Pasatiempo's all inclusive note was in the principal amount of $600,000 and the property was sold for $1,075,000. The significant amount of equity in the property indicates that Pasatiempo's secured claim was never threatened by the bankruptcy. Realistically and from the outset, Pasatiempo and its counsel should have known that its two complaints for relief from the automatic stay were very unlikely to have been granted considering the large amount of equity in the property. The court finds that Pasatiempo cannot be reimbursed for attorney's fees related to the automatic stay complaints.[1]

The court is aware that at least three courts have held that creditors may recover attorney's fees incurred in relief from automatic stay actions. *In re Dominguez*, 51 B.R. 171 (Bankr.C.D.Cal.1985); *In re Marino*, 23 B.R. 321 (Bankr.W.D.Mich.1982); *In re Carey*, 8 B.R. 1000 (Bankr.S.D.Cal.1981).

In *Dominguez*, *Marino*, and *Carey* the bankruptcy courts found that the oversecured creditor's actions came within the provisions of the note and deed of trust. It is unclear in those cases how much equity existed in the property and whether the secured creditor was adequately protected at all times. In the present case, considering the debtor's significant equity in the property, Pasatiempo's two complaints for relief from the automatic stay were not reasonably necessary to protect its secured claim.

Dicta in a recent ninth circuit case, *Johnson v. Righetti*, 756 F.2d 738 (9th Cir.1985) also makes questionable whether attorney's fees can be recovered by a creditor in a relief from automatic stay action. The court in *Johnson* found that stay litigation is based upon a federal statute and that state substantive law should not be applied in awarding attorney's fees. 756 F.2d at 740. While the court in *Johnson* also recognized that "section 506(b) concerns only the award of attorney's fees to oversecured creditors with a contractual right to reimbursement," *Johnson* may require that an agreement regarding attorney's fees specifically refer to actions upon a federal statute before attorney's fees can be awarded under § 506(b).

▮ Jenkins spent considerable time on activities related to the debtor's disclosure statement and plan. He also prepared a creditor's plan. The court notes that the debtor's plan of reorganization, which was never confirmed, did not attempt to alter Pasatiempo's secured claim. The plan provided that Pasatiempo would be paid in full within six years at the latest. It is true

---

**1.** The second complaint for relief from the automatic stay filed by Pasatiempo sought sequestration of rents. Although an attempt to sequester rents could be considered an action to collect

payments, Pasatiempo did not prevail on the sequestration. As such, the services performed do not fall within the attorney's fees provision of the note.

that absent bankruptcy, Pasatiempo could have expected payment much sooner. Although an argument can be made that the bankruptcy filing "affected the rights" and "powers" of Pasatiempo under the terms of the deed of trust, the filing of a bankruptcy petition under any chapter broadly affects the "rights" and "powers" of all creditors, most notably due to the automatic stay. Does this fact mean that an oversecured creditor should be compensated for its attorney's fees for any action it takes in a bankruptcy proceeding under the guise that its rights have been affected? This court answers in the negative. An oversecured creditor who seeks reimbursement for attorney's fees under § 506(b) must show how those services rendered were necessary to protect its interest regardless of a broadly worded provision in an agreement.

■ In the present case, none of Pasatiempo's actions, with the exception of the filing of a proof of claim, were necessary to protect its interest. The court is convinced that based upon the large amount of equity in the property, Pasatiempo's secured claim was never threatened. The inevitable result of full payment to Pasatiempo would have occurred even if it had not taken any action in the bankruptcy proceeding.

■ The billing statement indicates that Jenkins filed a proof of claim on behalf of Pasatiempo. Jenkins charged $160 for this service. The court finds that the filing of the proof of claim falls within the attorney's fees provision of the deed of trust. The proof of claim ensured that Pasatiempo would be paid the correct amount and was reasonably necessary to protect Pasatiempo's interest.[2]

## CONCLUSION

The only actions taken by Pasatiempo which fall within the attorney's fees provi-

---

**2.** Jenkins' law office was located in Foster City, California during the time he appeared before this court. A review of the billing statement shows that he apparently seeks to be compensated for his travel time to and from Sacramento at his normal hourly rate. Even if the court

sion of the note and deed of trust were the prepetition attempt to appoint a state court receiver and the postpetition filing of the proof of claim. None of the other actions taken by Pasatiempo were reasonably necessary to protect its secured claim.

The debtor is hereby ordered to reimburse Pasatiempo for its attorney's fees in the amount of $1,395. This memorandum opinion and decision shall constitute findings of fact and conclusions of law.

IT IS SO ORDERED.

were to award attorney's fees for the various court appearances, the court would not permit an award for travel time. *In re Pacific Express, Inc.,* 56 B.R. 859 (Bankr.E.D.Cal.1985); *In re Interstate United Electronic Sales Co.,* 44 B.R. 784 (Bankr.S.D.Fla.1984).