In re LE MARQUIS
ASSOCIATES, Debtor.

PASATIEMPO PROPERTIES,
Appellant,

v.

LE MARQUIS ASSOCIATES, Appellee.

BAP No. EC 86–1419 JAsMe.
Bankruptcy No. 282–04836–D–11.

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued and Submitted May 13, 1987.

Decided Oct. 30, 1987.

Thomas A. Jenkins, San Francisco, Cal., for appellant.

Joel Drum, Sacramento, Cal., for appellee.

Before JONES, ASHLAND and MEYERS, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

Creditor Pasatiempo Properties appeals an order denying it attorney's fees under Bankruptcy Code section 506(b) for all postpetition litigation except filing a proof of claim. We reverse.

## FACTS

Le Marquis Associates ("Le Marquis"), a limited partnership, was formed in 1981 in order to purchase an apartment complex located in Sacramento, California. On January 8, 1981, Le Marquis executed a $600,-000 promissory note in favor of the seller, Pasatiempo Properties ("Pasatiempo"). The total amount of the promissory note included the unpaid balance of five other promissory notes secured by five senior deeds of trust against the apartment complex. The Le Marquis note was due and payable on or before August 1, 1982. Le Marquis also executed an all inclusive deed of trust to secure the promissory note. The deed of trust wrapped around the five senior deeds of trust.

Le Marquis failed to pay the note by the due date, and on August 9, 1982 Pasatiempo recorded a notice of default and election to sell. On September 17, 1982, Pasatiempo filed a complaint against Le Marquis for specific performance and for appointment of a receiver in Sacramento County Superior Court. The superior court case was settled on October 29, 1982 when the parties entered into a stipulation that Le Marquis would pay to Pasatiempo a portion of the monthly rents collected.

On December 3, 1982, three days prior to the trustee's sale, Le Marquis filed a Chapter 11 petition. The debtor's sole asset was the apartment complex. Pasatiempo filed a complaint for relief from the automatic stay on January 14, 1983 which the court denied at a hearing on February 28, 1983. Pasatiempo subsequently filed a second complaint for relief from the automatic stay on April 13, 1983. The second complaint sought the additional relief of sequestration of rents. At the hearing on the second complaint, the court ordered the parties to file briefs on the sequestration issue. Thereafter, the matter was argued orally and taken under submission.

The debtor's disclosure statement was approved on June 29, 1983, but before the hearing on confirmation of the plan, the debtor sold the apartment complex, with court approval, for $1,075,000. The court entered an order confirming the sale on August 15, 1983. The order provided that all encumbrances of record would be paid from the sales proceeds prior to the close of escrow. The amounts due Pasatiempo under its note and deed of trust were paid pursuant to the order. In addition, Pasatiempo placed a demand against the escrow for the payment of its attorney's fees in the amount of $14,001.65. Pasatiempo also demanded $7,207 as payment for its foreclosure related charges, costs, and fees. The debtor objected to these demands as being excessive.

After a hearing on Pasatiempo's demand for attorney's fees and foreclosure charges, the trial court denied the attorney's fees and reduced the claim for foreclosure charges to $2,967. The court stated that neither the note nor the deed of trust authorized an award of attorney's fees for the services performed by Pasatiempo's counsel. Pasatiempo appealed to the district court. The district court affirmed the trial court's award of the reduced foreclosure charges, but remanded the case to the trial court "to reconsider its previous decision in light of [Bankruptcy Code] section 506(b) [11 U.S.C. section 506(b) ] and the cases interpreting it." The district court order specifically asked the trial court to determine whether any pre- or post-petition services rendered by Pasatiempo's counsel, Thomas A. Jenkins, were covered by the attorney's fees provision of the note or deed of trust.

After a hearing on the order remanding the case, the court requested letter briefs regarding the effect of *In re Johnson*, 756 F.2d 738 (9th Cir.1985) on the issues. On April 17, 1986, the court issued a memorandum opinion and decision, *In re Le Marquis Associates*, 65 B.R. 719 (Bankr.E.D. Cal.1986). The court held that a creditor seeking to recover attorney's fees under section 506(b) must have a contractual right to collect the fees and the fees must be necessary to protect the creditor's claim. The court concluded that because Jenkins' efforts to have a state court receiver appointed and the filing of a proof of claim met this test, fees for those activities were recoverable. The court further concluded that because there was substantial equity in the property, the complaints to lift the automatic stay and Jenkins' efforts regarding a plan of reorganization were unnecessary and therefore not recoverable. Accordingly, the court awarded Pasatiempo $1,235.00 for Jenkins' prepetition services and $160.00 for preparing and filing the proof of claim. Pasatiempo appeals.

## DISCUSSION

The question presented by this appeal is whether the trial court erred by denying an oversecured creditor postpetition attorney's fees for lift-stay litigation, for opposing the debtor's plan of reorganization, and for proposing a creditor's plan.[1] We review such a decision for an abuse of discretion or an erroneous application of the law. *See In re Dalessio*, 74 B.R. 721, 722 (9th Cir.BAP 1987).

■ In *In re Dalessio*, 74 B.R. 721, we noted that under section 506(b),[2] "when

fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees in mandatory." *Id.* at 723. We further noted that "this allowance is limited by the reasonableness requirement in [section] 506(b)." *Id.* In defining "reasonableness", we stated:

> Reasonableness embodies a range of human conduct. The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable. The bankruptcy court should inquire whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property. *In re Carey*, 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981).

*Id.* In making a determination of reasonableness under section 506(b) the bankruptcy court does not look to state law, but rather makes an independent evaluation. *See In re 268 Ltd.*, 789 F.2d 674, 677 (9th Cir.1986).

In the case at bar, the deed of trust requires the debtor/trustor:

> (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including costs of evidence of title and attorney's fees, in

---

**1.** It is unclear whether the court below denied the fees requested by Pasatiempo because they were not covered by the attorney's fee provision in the note and deed of trust or because they were not "reasonable" under section 506(b). The court stated that the issue in the case was "whether the services performed by Pasatiempo's counsel are covered by the provisions of the note and deed of trust." 65 B.R. at 722. The court also stated, however, that, "This court holds that a creditor's attorney who seeks compensation from the estate under [section] 506(b) ... must show that the services performed were necessary." *Id.* In its conclusion, the court stated that because the fees were not "reason-

ably necessary" to protect Pasatiempo's secured claim, they were not covered by the provisions in the note and deed of trust. *Id.* at 724.

**2.** Bankruptcy Code section 506(b) provides:

> To the extent that an allowed secured claim secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. 11 U.S.C. section 506(b).

any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

65 B.R. at 722. The promissory note provides:

If any party to this Note or any assignee of any party hereunder shall bring an action in any court of competent jurisdiction to enforce any covenant or condition of this Note, including any action to collect any payments required hereunder, it is hereby mutually agreed that the prevailing party shall be entitled to reasonable attorney's fees and all costs and expenses in connection with said action, which sums shall be included in any judgment or decree entered in such action in favor of the prevailing party.

*Id.*

We can find no reported cases in which attorney's fees for postpetition litigation have been completely denied to an oversecured creditor where the deed of trust contained a broad attorney's fee provision such as the one here. *In re Brunel,* 54 B.R. 462 (Bankr.D.Colo.1985), is analogous to the case at bar. There, the creditor's claim was approximately $670,000. The appraised value of the property was $1,000,-000 and the property was ultimately sold for $900,000. The court awarded the full amount of fees sought by the creditor after determining that the creditor had acted reasonably in seeking relief from the stay. The court refused to create a per se rule that oversecured creditors who unsuccessfully seek relief from the stay should be denied recovery of attorney's fees. *Id.* at 466.[3]

■ The same reasoning applies in the case at bar. Here, the outstanding obligation was over $600,000 and was entirely due; the Pasatiempo deed of trust was subject to five senior deeds of trust; interest was accruing at $41.40 per day on Pasatiempo's obligation alone; despite a prepetition state court stipulation, the debtor was not paying Pasatiempo any of the rents from the property; the debtor had paid no

taxes on the property or any of the foreclosure costs. Under these circumstances, we can only conclude that the trial court erred in finding that Pasatiempo's seeking relief from the stay was unnecessary and therefore unreasonable.

■ We also conclude that the trial court erred in denying all fees for Pasatiempo's efforts opposing the LeMarquis plan of reorganization. The debtor's plan called for refinancing the property, paying Pasatiempo part of its claim and giving it a new promissory note. Under the new note, there would be no payments for two years, interest only payments the third year, and principal and interest payments for three more years. The plan specifically stated that Pasatiempo was impaired. In light of the debtor's failure to make payments before and after filing bankruptcy and Pasatiempo's treatment under the plan, Pasatiempo acted reasonably in opposing the debtor's plan and in trying to obtain approval of a more favorable plan.

■ In the case at bar, the trial court created a per se rule that a substantially oversecured creditor may not recover attorney's fees for automatic stay litigation. The court stated:

In determining whether any of the services performed by Jenkins were necessary to protect the security or the rights and powers of Pasatiempo, one significant fact exists: Pasatiempo's all inclusive note was in the principal amount of $600,000 and the property was sold for $1,075,000. The significant amount of equity in the property indicates that Pasatiempo's secured claim was never threatened by the bankruptcy. Realistically and from the outset, Pasatiempo and its counsel should have known that its two complaints for relief from the automatic stay were very unlikely to have been granted considering the large amount of equity in the property. The court finds that Pasatiempo cannot be reimbursed for attorney's fees related to the automatic stay complaints.

---

**3.** The *Brunel* court reviews a number of cases from around the country where attorney's fees

were allowed substantially oversecured creditors. 54 B.R. at 464–465.

65 B.R. at 723. The court used similar reasoning in denying all fees related to the plans of reorganization. Such a per se rule is, in our opinion, inappropriate and is an erroneous application of the law.[4]

This conclusion is consistent with our conclusion in *Dalessio*. There, after reviewing the fee application, we found that the creditor had not met its burden of showing that the fees requested were reasonable. 74 B.R. at 724. We were concerned that over half the time spent by the creditor's attorney was for phone calls and that many items on the bill were lumped together. *Id.* Accordingly, we remanded the case for the trial court to reconsider the amount of appropriate fees. *Id.*

We face no such situation in the case at bar. Here, the trial court has denied all fees for automatic stay litigation and for challenging a proposed plan of reorganization solely because the creditor was substantially oversecured. *See* 65 B.R. at 723. In our view, it was clearly appropriate for Pasatiempo to seek relief from the automatic stay and sequestration of rents. Under the circumstances of this case, it was also appropriate for Pasatiempo to oppose the plan of reorganization proposed by LeMarquis. Moreover, the fee application submitted by Pasatiempo's counsel is detailed and clearly explains every entry. Accordingly, we REVERSE the trial court's order denying Pasatiempo's post-petition fees and remand for the limited purpose of having the trial court determine a reasonable amount of fees for these services.

---

**4.** We further note that the trial court was concerned that dicta in *In re Johnson*, 756 F.2d 738, "makes questionable whether attorney's fees can be recovered by a creditor in a relief from automatic stay action." 65 B.R. at 723 (citing 756 F.2d at 740). We recently addressed this question in *In re Salazar*, 82 B.R. 538 (9th Cir. BAP 1987) where we concluded that *Johnson* has no bearing on the allowance of attorney's fees to oversecured creditors under section 506(b). Therefore, to the extent it relied on *Johnson* in denying Pasatiempo attorney's fees, the trial court erred.