**In re Gail Ann GOOD, Debtor.**

**Bankruptcy No. 96–02987.**

United States Bankruptcy Court,
D. Idaho.

April 14, 1997.

Randal J. French, Bauer & French, Boise, ID, for Debtor.

Richard B. Eismann, Nampa, ID, for Creditor Hopkins Mortgage Fund, Inc.

John Krommenhoek, Boise, ID, Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

This Chapter 13 case is before the Court to consider confirmation of Debtor's amended plan. This otherwise uncomplicated case gives rise to an interesting issue of bankruptcy law: may a Chapter 13 plan require that payments made under the plan to cure a home mortgage default be applied by the lender first to the principal portion of the default balance and, thereafter, to accrued interest on the default, contrary to the terms of the underlying promissory note and deed of trust? Debtor's amended plan contains such a proposal, to which the mortgage lender, Hopkins Mortgage Fund, Inc. ("Creditor") objects. In addition, Debtor objects to the amount of attorney fees and costs claimed by Creditor as a part of the lender's allowed secured claim and default. The Court conducted a hearing on these matters, the parties have submitted written briefs, and the Court is advised by the Trustee that all other issues concerning confirmation have been resolved.

*Facts.*

There are no disputed facts, as the Court understands this record. Creditor holds a deed of trust on Debtor's residence as security for a promissory note. While once subject to contest, the parties now agree as to the amount of the arrearage on Creditor's mortgage which must be cured through Debtor's plan, except for the amount of Creditor's attorney fees and costs. Debtor's plan pro-

poses to pay that amount to Creditor over the term of the plan in monthly payments "first to pay the Amount Due to principal, then to accrued interest." Debtor's Amended Chapter 13 Plan, ¶ 2(b)(3). Creditor objects to this provision.

*Amount of Attorney Fees.*

■ Creditor seeks to add $2,543.14 in attorney fees and costs to the default balance. Debtor concedes that under the Bankruptcy Code and the contract documents, Creditor is entitled to reasonable attorney fees and costs.[1] *See* 11 U.S.C. § 506(b) and § 1322(e). Debtor alleges that the amount of fees and costs charged to Debtor's account in this case is excessive.

Section 506(b) requires that the fees and costs allowed must be "reasonable." As this Court has previously observed:

> the reasonableness requirement concerns a standard that "necessarily employs vague, deliberately broad boundaries. . . ." *In the Matter of Itano Farms, Inc.,* 91 I.B.C.R. 79, 81. The Court must determine the reasonableness based on all relevant factors and whether the creditor reasonably believed that the steps taken were necessary to protect its interests in the debtor's property. *See id.* at 80; *In re Le Marquis Associates,* 81 B.R. 576, 578 (9th Cir.B.A.P. 1987). However a Court must view a creditor's decisions objectively to see that an "oversecured creditor is not given a blank check to incur fees and costs which will automatically be reimbursed out of its collateral." *Itano Farms,* 91 I.B.C.R. at 81.

*E.g., In re Pope,* 91 I.B.C.R. 141, 143.

■ Counsel for Creditor has submitted a detailed itemization of his time, services and charges. The bulk of charges for legal services are attributable to counsel's two paralegals. Some of the work performed by the legal assistants would be compensable at a higher rate had they been performed by an attorney, and so in that sense Debtor has

actually not been prejudiced by the use of the paralegals. However, other tasks performed by the legal assistants, and billed out at an hourly rate, appear to either be clerical in nature, or such that they would have been performed more properly by nonprofessional personnel. Such tasks as preparing transmittal and other letters to the clerk of this Court and routine fax and phone communications should not be compensable at professional rates. In addition, several hours were evidently spent by the legal assistant computing the amount of the default, a task, in the Court's opinion, properly relegated to the lender's staff. This work is not compensable as professional services to the extent claimed in this case. Finally, the Court is concerned with the charges made at full hourly rates for counsel or his paralegal to travel between Nampa and Boise to attend Court hearings. Absent a showing that counsel or the assistant was actually able to perform legal services while traveling, the Court concludes that a reduced hourly charge is appropriate for this time.

■ In summary, the Court will allow all out-of-pocket expenses incurred by counsel in this case. The Court concludes a reduction equal to ten hours of paralegal time, charged out at $36 per hour, or $360, is appropriate. In addition, the Court will reduce the charges billed by $100 for travel time. Therefore, the total fees and costs claimed shall be reduced by $460, leaving the sum of $2,083.14 in attorney fees and costs to be added to the default balance.

*Application of Plan Default Payments.*

Debtor's plan requires that the monthly payments made under the plan to Creditor to cure the default first be applied by the Creditor to the principal component of the arrearage, with the balance applied to accrued interest. Creditor objects to this provision as not authorized by the Bankruptcy Code, and as being contrary to the parties' contracts.

---

**1.** To recover attorney fees under Section 506(b), four elements must be met: (1) the claim must be an allowed secured claim; (2) the claim must be oversecured; (3) the underlying agreement must provide for the recovery of fees and expenses; and, (4) the fees and expenses must be reasonable. *E.g., In re Salazar,* 82 B.R. 538 (9th Cir.B.A.P.1987). Here, Debtor agrees that Creditor has an allowed secured claim which is oversecured. The promissory note contains a well-drafted provision allowing Creditor to recover its attorney fees and costs in any Bankruptcy proceeding initiated by the Debtor. Promissory Note, ¶ 8.

■ The analysis of this issue necessarily starts with a recognition that Congress holds home mortgages in Chapter 13 in high regard. While generally a debtor's plan may modify the rights of holders of secured claims, such an option is not available as to a creditor with a "claim secured only by a security interest in the real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2).

■ In Section 1322(b)(5), however, there is an exception to the prohibition against modifying rights of home mortgage lenders enunciated in Section 1322(b)(2). Under Section 1322(b)(5), a debtor may "provide [in the plan] for the curing of any default within a reasonable time and maintenance of payments while the case is pending" on a home mortgage "notwithstanding paragraph (2) of this subsection". 11 U.S.C. § 1322(b)(5). In other words, most terms of a home mortgage loan may not be modified in a Chapter 13 plan, but such a plan may propose to cure a default on the mortgage debt over a reasonable period of time, while the debtor maintains the current payments. However, the right to cure a default does not include the power to alter other contract provisions concerning how payments on the mortgage should be applied. After considering Debtor's arguments here, the Court concludes that the Debtor's plan requiring default payments be applied by Creditor first to the principal balance, then to accrued interest, violates Section 1322(b)(2).

■ Debtor argues that her plan provision is authorized by Section 1322(c). That provision, added by the 1994 amendments to the Bankruptcy Code, provides that:

### § 1322.   Contents of Plan

. . . .

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph

(3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to Section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(1), (2). Subsection (1) of this provision guarantees that a Chapter 13 debtor's right to cure a mortgage default is not cut off until, at the earliest, the date of the foreclosure sale on the mortgage. Subsection (2) provides that payments on a mortgage claim may continue for the duration of the debtor's Chapter 13 plan, even if the mortgage balance comes due (such as in the case of a "balloon payment") prior the conclusion of the plan. While the provisions of subsection (c) apply "notwithstanding subsection (b)(2) [of Section 1322]" and constitute additional exceptions to the rule against modification of home mortgage claimants' rights, neither authorize the plan treatment proposed by Debtor in this case.

■ Debtor also points to new subsection (e) to Section 1322, which provides:

### § 1322.   Contents of plan

.      .      .      .      .

(e) Notwithstanding subsection (b)(2) of this Section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e).[2] This provision, also added by Congress in 1994, was enacted to

---

**2.** Section 1322(e) applies prospectively, and therefore, is applicable only to agreements entered into after October 22, 1994. Bankruptcy Reform Act of 1994, P.L. 103–394,

§ 702(b)(2)(D), 108 Stat. 4106, 4151. Because the agreements here were entered into after the effective date of Section 1322(e), the provision is applicable.

overrule the decision of the U.S. Supreme Court in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).[3] The Supreme Court had held that a home mortgage lender was, as a matter of law, entitled to interest on any default cured through a plan, even in those states whose laws prohibited such and even where the parties' contracts did not provide for payment of such "interest on interest." *Id.* at 475, 113 S.Ct. at 2193. Instead, Congress intended through the amendment that the amount of the default to be cured under a plan should be determined according to the underlying contracts and applicable nonbankruptcy law. 11 U.S.C. § 1322(e).

However, this case does not involve a *Rake v. Wade* type issue, in that the amount of the default is not in question. Creditor acknowledges that the amount it can claim on the default is limited by its contracts with Debtor. Subsection (e) does not address how a debtor's payments are to be applied in curing a default. If anything, this new provision highlights Congress' intent that except where specifically authorized by the Bankruptcy Code, the contracts, not the Code, should govern the rights of parties to a home mortgage loan in Chapter 13.[4]

Debtor observes that Chapter 13 does not compel her to apply payments on the mortgage default in any particular fashion. She is right. However, the Code also does not allow her to modify Creditor's rights under its note and deed of trust. Therefore, the Court concludes that the parties are bound by their contracts concerning how default payments must be applied.

The Court would end its decision at this juncture were there not another complication present under these facts. Remarkably, Creditor's promissory note and deed of trust contain different and, in part, inconsistent provisions governing the application of payments. The note requires that "[a]ll payments ... shall be applied first to the late charges, then interest accrued and, thereafter, to the principal." Promissory Note, ¶ 1.(e). The contemporaneous deed of trust securing Creditor's note provides that "all payments received ... shall be applied: first to any prepayment charges due under the Note;[5] second to [insurance and property tax reserve accounts]; third, to interest due; fourth, to principal due; and last, to any late charges." Deed of Trust, ¶ 3.

Creditor's default claim includes amounts for principal, accrued interest, late charges and attorney fees and costs. The contract documents do not adequately answer how Debtor's payments should be applied. For example, while both the promissory note and deed of trust require Debtor to reimburse Creditor for any attorney fees and costs it incurs, neither document explains how these collection costs fit into the payment application scheme. Second, the contracts seem inconsistent in how payments should be applied to late charges. Under the note, late charges are paid first; under the deed of trust, late charges are paid last.

■■■■ Construing the conflicting contract documents would involve a detailed analysis.[6] It is unnecessary to undertake that task here, though. Debtor's plan pro-

---

3. *See* Bankruptcy Reform Act of 1994, H.R.Rep. No. 835, 103rd Cong., 2d Sess. 55, 1994 U.S.C.C.A.N. 3340, 3364.

4. *E.g., In re Sarkese,* 189 B.R. 531, 536–36 n. 6 (Bankr.M.D.Fla.1995).

5. No prepayment charges are due in this case.

6. Upon determining that an ambiguity exists, the intent of the parties is determined, in part, by, referring to the language of the agreements and construing the agreements together, so as to give effect to every part of the agreements, if possible. *Brown v. Perkins,* 129 Idaho 189, 192–93, 923 P.2d 434, 437–38 (1996). Further, evidence such

as the objective and purpose of the agreements, the conduct of the parties, and the circumstances at the time of the formulation of the agreements, are relevant in resolving such ambiguity. *Weilmunster v. Weilmunster,* 124 Idaho 227, 235, 858 P.2d 766, 774 (Ct.App.1993). To the extent that an ambiguity cannot be resolved using the extrinsic evidence, the ambiguity should be resolved against the party who drafted the agreements. *Luzar v. Western Sur. Co.,* 107 Idaho 693, 697, 692 P.2d 337, 341 (1984); *Farnsworth v. Dairymen's Creamer Assoc.,* 125 Idaho 866, 870, 876 P.2d 148, 152 (Ct.App.1994).

vides for payment of principal first, then interest, but is silent on how late charges and attorney fees will be paid. The note and trust deed are consistent in requiring that accrued interest is payable before application of payments to principal. Therefore, Creditor's right to insist upon interest before principal may not be modified under Debtor's Chapter 13 plan. Confirmation must be denied. As to how the other default amounts are paid, it seems that the contract is inconclusive. The parties should be allowed an opportunity to negotiate a possible plan provision, keeping in mind the expense incident to any further dispute.

*Conclusion.*

Because Debtor's proposed amended plan contains a provision which improperly modifies Creditor's rights without its consent, confirmation of Debtor's amended plan must be denied. An order will be entered which allows Debtor a brief opportunity to file another amended plan to correct this defect. Depending on the course of further proceedings, Creditor may be entitled to additional reasonable attorney fees and costs, and so no final order will be entered concerning the amount thereof. The Court encourages the parties to settle any remaining issues.