### In re MID–STATE FERTILIZER COMPANY, Debtor(s).

### Bankruptcy No. BK 86–40326.

United States Bankruptcy Court, S.D. Illinois.

March 17, 1988.

James M. Wexstten, Mt. Vernon, Ill., Thos. E. Leiter, Peoria, Ill., for debtor.

David A. Warfield, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, Mo., for Exchange Nat. Bank.

### ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on the Application for Allowance of Compensation of Fees filed by Exchange National Bank of Chicago ("Bank"). The Bank seeks to recover fees and expenses under 11 U.S.C. § 506(b) in the total amount of $129,-432.66.[1] Objections were filed by the debtor, the trustee and two creditors, Chevron Chemical Company and Windmill Fertilizers America, Inc.

On or about June 24, 1986, the debtor, Mid–State Fertilizer Company, filed its petition for relief under Chapter 11. The case was then converted to a Chapter 7 on March 25, 1987 and a trustee was appointed. At the time this case was commenced, debtor owed the Bank approximately $885,-000.00. Pursuant to a promissory note dated November 30, 1985, the Bank claimed a security interest in substantially all of debtor's assets. The Bank has since been paid all of the principal due on the note, and the trustee has agreed to pay the Bank any remaining interest that is due. The Bank, as an oversecured creditor, now seeks recovery of fees and expenses pursuant to the terms of the promissory note and section 506(b) of the Bankruptcy Code.

The application now before the Court seeks reimbursement for fees and expenses incurred by three law firms, one account-

---

1. The initial fee request was for $158,426.52. At the hearing on the Bank's application, however, the Bank agreed to reduce its fee by $28,993.86. Of that amount, $23,417.00 represented fees in-curred in defense of a RICO lawsuit, and $5,576.86 represented fees for services performed by the Bank's internal auditors.

ing firm and one appraiser. A summary of the issues and fees submitted by counsel for the Bank shows that the services of thirteen attorneys, two summer clerks and six paralegals are included in the application for fees. Of the total fee requested, $121,109.66 represents attorney's fees and expenses, $7,245.03 represents the fees of the accounting firm and $1,077.97 represents the appraiser's fee. After thoroughly reviewing the Bank's application, the Court finds that the total fee should be substantially reduced since 1) the application fails to comply with the standards for fee applications as established by this Court in *In re Wiedau's, Inc.*, 78 B.R. 904 (Bankr.S.D.Ill.1987); and 2) the fees are not reasonable within the meaning of 11 U.S.C. § 506(b).

■ In *Wiedau's, Inc.*, this Court set forth the standards attorneys and other professionals must follow in preparing fee applications. The fee application in the present case fails to meet those standards in several different respects. For example, many entries do not adequately explain the nature and purpose of the work performed and/or fail to adequately identify the parties involved. *Wiedau's, Inc.* at 907–08. Typical of this shortcoming are entries listing conferences, telephone calls and correspondence that only state the name of the person conferred with or called without setting forth the purpose of the conversation or correspondence. The itemized statement submitted by Schwartz, Cooper, Kolb & Gaynor, in particular, contains numerous such entries. Additionally, although time has been charged for review of documents, fees are allowable for this type of service "[o]nly if such review is required to form some kind of response or to perform a particular task...." *Id.* at 909. Many of the entries do not provide the Court with sufficient detail to make this determination.

The fee application also violates the requirement that different entries not be "lumped" together. This problem is exemplified throughout in the itemized statements submitted by all three law firms, but is especially prevalent in those statements submitted by Husch, Eppenberger, Donohue, Elson & Cornfeld and Schwartz, Cooper, Kolb & Gaynor. As stated in *Wiedau's, Inc.*:

> Applicants may not circumvent the minimum time requirement or any of the requirements of detail by "lumping" a number of activities into a single entry. Each type of service should be listed with the corresponding specific time allotment. Otherwise, the Court is unable to determine whether or not the time spent on a specific task was reasonable. Therefore, services which have been lumped together are not compensable.

*Id.* at 908.

In addition, the statement submitted by Husch, Eppenberger indicates that on several occasions, more than one attorney appeared in court on a motion or argument and in each instance, more than one attorney charged time for the appearance. *Wiedau's, Inc.* prohibits this practice and holds that "[w]hen more than one attorney appears in court on a motion or argument or for a conference, no fee should be sought for nonparticipating counsel." *Id.* Although the Bank explained, in general, the need to have both a full-time litigator and an experienced bankruptcy attorney involved in this case, the specific entries in question do not reflect the necessity for duplicate charges.

The most egregious violation of *Wiedau's, Inc.*, however, concerns the hours billed for interoffice conferences. The statement submitted by Husch, Eppenberger, in particular, is replete with entries describing interoffice conferences, and in nearly every instance, each participating attorney has charged time for the conference. Again, *Wiedau's, Inc.* prohibits this practice and expressly holds that "[w]hile some intraoffice conferences may be necessary, *no more than one attorney may charge for it unless an explanation of each attorney's participation is given.*" *Id.* (emphasis added). The required explanation is simply not provided in the application.

■ Finally, the Court would like to note that counsel cannot be compensated for

time spent in preparing the fee application. Although the amount charged for this time constitutes a very small portion of the total fee, under *Wiedau's, Inc.*, this time is not compensable. *Id.* at 909.

 Even assuming *arguendo* that the standards of *Wiedau's, Inc.* were satisfied, the Court finds that the fee requested is not "reasonable" under 11 U.S.C. § 506(b). That section, which allows oversecured creditors to recover fees and costs from the bankruptcy estate, provides as follows:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable* fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (emphasis added). The Agreement in the present case provides that upon debtor's default, the Bank is entitled to be reimbursed for costs, expenses and attorney's fees incurred in the "collection, protection and sale of the collateral...." Therefore, only costs, expenses and fees incurred for these specific purposes may be recovered under section 506(b). Additionally, the fees and costs must be reasonable.

In the case of *In re Wonder Corp. of America*, 72 B.R. 580 (Bankr.D.Conn.1987), the court listed several factors that must be considered in determining the reasonableness of fees under 506(b). Those factors include the following:

1. The time spent must be appropriate to the complexity of the task;

2. The task must be assigned to the fewest and least senior attorneys able to render the service in a competent and efficient manner; and

3. The fee should be adjusted to reflect duplicative services rendered by attorneys representing other parties with a common interest in the case.

*Id.* at 589. The court, in *Wonder Corp.*, disallowed a substantial portion of the fee, finding that counsel's time sheets were "re-

plete with duplication, including innumerable telephonic conferences between Bank's counsel, regular attendance by members of each counsel's firms at every court hearing, and numerous out-of-court conferences." *Id.* at 593.

In the present case, the Court is not convinced that it was necessary for counsel to expend such an excessive amount of time in protecting and preserving its collateral. As emphasized by counsel for Chevron and Windmill, the Bank was substantially oversecured and there was no serious risk that its collateral would be dissipated. More importantly, however, the Court believes that it was totally unnecessary to employ the services of two law firms and thirteen attorneys. The employment of both a Chicago and St. Louis law firm resulted in a substantial duplication of services and a highly inflated fee. Likewise, although counsel for the Bank has described the benefits of interoffice conferences, the Court believes that an excessive amount of time has been charged for these conferences, and that the bankruptcy estate should not be required to compensate counsel for this time. As stated by the court in *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir.1986), "the bankruptcy court [in determining the reasonableness of fees under 506(b)] is to bear in mind that the debtor's estate must be administered as efficiently and economically as possible, and that sometimes bankruptcy attorneys perform dual functions which might lead to an award of duplicative fees if overlooked." *Id.* at 1058. The Court finds, for the reasons stated above, that the services rendered by counsel for the Bank were not accomplished as efficiently and economically as possible, that the fees are not reasonable within the meaning of section 506(b), and that accordingly, the fee should be reduced by fifty percent.

Accordingly, IT IS ORDERED that fees and expenses in the amount of $64,716.33 are ALLOWED.[2]

2. The Court typically reduces only the fee and

allows the full amount of expenses. In this

case, however, counsel has not provided a summary that separately itemizes fees and expenses, and the Court has therefore reduced the total sum requested.