**In re William J. STOECKER, Debtor.**

**Bankruptcy No. 89 B 02873.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 1, 1990.

Thomas Raleigh, Raleigh & Helms, Neal, Gerber & Eisenberg, Chicago, Ill., Trustee.

Thomas J. Magill, Alexander Terras, Burke, Wilson & McIlvaine, Chicago, Ill., for Old Kent Bank N.A.

Bruce J. Waldman, Cornelius P. Brown, Cohon, Raizes & Regal, Chicago, Ill., for Chicago Title and Trust Co.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the fee application of Old Kent Bank N.A. f/k/a Illinois Regional Bank N.A., Elmhurst (the "Bank") by and through its counsel, Burke, Wilson & McIlvaine, pursuant to 11 U.S.C. § 506(b) for the allowance of $45,514.55[1] in compensation and reimbursement of expenses in the amount of $1,576.14. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. Objections to the fee application were filed by Thomas E. Raleigh the trustee of the Debtor's estate (the "Trustee") and Chicago Title and Trust Company ("CT & T").

For the reasons set forth herein, the Court hereby allows the Bank $37,698.36 in compensation and reimbursement of expenses in the amount of $1,515.14.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), and (O).

Robert Radasevich, Raleigh & Helms, Chicago, Ill., for Thomas E. Raleigh, trustee.

1. The Bank originally requested fees in the amount of $47,349.55 which included estimated fees from February 1, 1990 through March 19, 1990 of $3,993.30. In the Bank's reply in support of the fee application, additional detail was provided to show that after February 1, 1990, the attorneys' actual time expended was $7,554.75. Also in the reply, the Bank voluntarily discounted its fee request in the sum of $1,835.00. This amount represents the time incurred in connection with the Bank's loan to Fulton Market Cold Storage Company, a nondebtor subsidiary of The Grabill Corp., No. 89 B 01639, of which the Debtor is a sole equity shareholder. The Bank apparently stands on its original requested fees of $47,349.55 less the voluntary discount of $1,835.00 or $45,514.55.

## II.  FACTS AND BACKGROUND

Many of the facts, background and some of the history of this case is contained in earlier Opinions of the Court.  *See In re Grabill Corp.*, 110 B.R. 356, 358 (Bankr.N. D.Ill.1990); *In re Grabill Corp.*, 103 B.R. 996, 997–998 (Bankr.N.D.Ill.1989); *In re Stoecker*, 103 B.R. 182, 184–185 (Bankr.N. D.Ill.1989).

The Bank has a secured claim in the Debtor's real property located at 155 E. Onwentsia, Lake Forest, Illinois (the "Onwentsia property") as evidenced by a Trust Deed dated December 29, 1988, securing the principal amount of debt in the sum of $800,000.00.  On October 23, 1989, pursuant to an Order of the Court, the property was sold by the Trustee, with the Bank's lien to attach to the sale proceeds.  The balance of the Bank's loan has been paid in full from the proceeds of the sale.

Based upon the underlying documents, the Bank is entitled to recover its attorneys' fees and costs incurred in enforcing covenants under the Trust Deed.  In particular, in any suit to foreclose the lien thereof, paragraph 4 of the Trust Deed provides in relevant part:

> When the indebtedness hereby accrued shall become due whether by acceleration or otherwise, holders of the note or Trustee shall have the right to foreclose the lien hereof.  In any suit to foreclose the lien hereof, there shall be allowed and included as additional indebtedness in the decree for sale all expenditures and expenses which may be paid or incurred by or on behalf of Trustee or holders of the note for attorney's fees ... and costs ... to prosecute such suit or to evidence to bidders at any sale which may be had pursuant to such decree the true condition of the title in or the value of the premises.  All expenditures and expenses of the nature of this paragraph mentioned shall become so much additional indebtedness secured hereby and immediately due and payable, with interest thereon at the rate of xxxxx per cent per annum, when paid or incurred by Trustee or holders of the note in connection with (a) any proceeding, including probate and bankruptcy proceedings, to which either of them shall be a party, either as plaintiff, claimant or defendant, by reason of this trust deed or any indebtedness hereby accrued; or (b) preparations for the commencement of any suit for the foreclosure hereof after accrual of such right to foreclose whether or not actually commenced; or (c) preparations for the defense of any threatened suit or proceeding which might affect the premises or the security hereof, whether or not actually commenced.

On March 19, 1990, the Court held a hearing on the fee application.  The Bank was given leave to supplement the fee application on or before April 2, 1990.  Subsequently, a supplement was filed on April 3, 1990.  In addition, leave was given CT & T, the Trustee and any other party in interest to file a response on or before April 16, 1990.  The Trustee filed a response on April 12, 1990, and CT & T filed its response on April 18, 1990.  The Bank was then given leave to reply on or before April 23, 1990.  A reply was filed on that date.  Thereafter, the matter was taken under advisement.

## III.  ARGUMENTS BY THE PARTIES

The Trustee's objection asserts that the compensation and expenses sought are unreasonable and excessive.  The Trustee notes that fifteen attorneys and paralegals expended 383.7 hours of service representing the Bank in this matter.  By comparison, the Trustee notes that his counsel expended 157.55 hours and generated fees in the amount of $21,167.75 concerning the Onwentsia property, its sale and the lien, and other claims asserted against it.  The Trustee claims that this comparison provides some guidance in considering the reasonableness of the fees sought.  Moreover, the Trustee states that the expense request fails to provide the requisite description required by recent case law.  The Trustee recommends that the Bank's fees should be reduced by $12,606.54 in addition to the voluntary reduction of $1,835.00.  The Trustee recommends that expenses should

be partially reimbursed in the sum of $1,515.14.

CT & T objected to the original fee application on the basis that the Bank did not allocate the services into categories, which made it difficult to determine the reasonableness of the requested fees. CT & T further claims that the Bank is not entitled to compensation for fees arising out of a criminal case pending against the Debtor in the United States District Court for the Northern District of Illinois (*United States of America v. Stoecker*, 103 B.R. 182). CT & T states that the underlying security documents do not provide any authority for the payment of attorneys' fees in relation to that lawsuit. Additionally, CT & T objects to the payment of compensation for services rendered in connection with seeking adequate protection of the Bank's oversecured lien on the Onwentsia property. CT & T also objects to compensation for work performed in relation to the Westbank litigation, as the Bank's mortgage title insurer defended the action. Furthermore, CT & T objects to the Bank's estimated fees of $3,993.30 for services performed after February 1, 1990.

## IV. DISCUSSION

### A. APPLICABLE STATUTORY STANDARDS

■ Section 506(b) of the Bankruptcy Code provides in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable fees*, costs, or charges *provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b) (emphasis added). To substantiate a claim for attorneys' fees under section 506(b), the Bank must satisfy four requirements in order for its fees and costs to be allowed as part of its claim: 1) the Bank must have an allowed secured claim; 2) the Bank must be oversecured; 3) the underlying documents must provide for such fees and costs; and 4) the claim for

fees and costs must be reasonable. *See In re Josephs*, 108 B.R. 654, 656 (Bankr.N.D. Ill.1989); *In re Rutherford*, 28 B.R. 899, 902 (Bankr.N.D.Ill.1983); *In re Salazar*, 82 B.R. 538, 540 (9th Cir. BAP 1987); *In re Reposa*, 94 B.R. 257, 259–260 (Bankr.D.R.I. 1988). The Bank has an allowed secured claim and is oversecured. Only the third and fourth requirements are at issue and contested by the parties.

■ Section 506(b) provides that only "reasonable fees, costs or charges" are compensable. In making a determination of reasonableness, the Court does not look to state law, but rather makes an independent evaluation. *See In re 268, Ltd.*, 789 F.2d 674, 677 (9th Cir.1986); *Unsecured Creditors' Committee 82–00261c–11A v. Walter E. Heller & Co.*, 768 F.2d 580 (4th Cir.1985). The Court has broad discretion to determine what constitutes a "reasonable" fee. *In re Mills*, 77 B.R. 413, 419 (Bankr.S.D.N.Y.1987). The Court must review the fees to ensure that they are reasonable in scope and amount. Ginsberg, *Bankruptcy*, § 4.05[i]. *In re Calzaretta*, 35 B.R. 92 (Bankr.N.D.Ill.1983) lists several factors that must be considered when determining the reasonableness of fees under section 506(b). The criteria to be evaluated in determining reasonableness of fees are: 1) time and labor required; 2) novelty and difficulty of questions; 3) skill requisite to perform legal services; 4) preclusion of other employment by acceptance of the case; 5) customary fee; 6) whether the fee sought is fixed or contingent; 7) time limitations; and 8) the amount involved and results achieved. *Id.* at 94; *see also In re Mid–State Fertilizer Co.*, 83 B.R. 555, 557 (Bankr.S.D.Ill.1988). Moreover, only necessary services will be compensated. *In re Wonder Corp. of America*, 82 B.R. 186 (D.Conn.1988); *In re Reposa*, 94 B.R. 257 (Bankr.D.R.I.1988). Courts frequently disallow or reduce fees sought by secured creditors on finding that the work performed was unnecessary or excessive. *See, e.g., In re Kroh Brothers Development Co.*, 105 B.R. 515, 529–530 (Bankr.W. D.Mo.1989); *In re Mid–State Fertilizer Co.*, 83 B.R. 555, 557 (Bankr.S.D.Ill.1988).

### B. SUMMARY OF THE COMPENSATION REQUESTED

The supplement to the fee application classifies the services rendered into eight categories. The following is a list of the categories, the hours expended and the compensation requested:

| Category | Time Expended | Amount Requested |
|---|---|---|
| A. Westbank assertions of priority lien status against 155 E. Onwentsia | 29.85 hours | $ 4,087.21 |
| B. Overall Administration | 48.00 hours | 6,554.10 |
| C. Proof of Claim | 10.35 hours | 1,410.95 |
| D. § 362 motion and § 363 sale of 155 E. Onwentsia | 72.60 hours | 9,926.72 |
| E. Westbank Adversary | 108.85 hours | 14,878.71 |
| F. Coordination with Mortgage Title Insurer | 20.95 hours | 2,867.42 |
| G. Criminal Proceedings | 43.25 hours | 5,789.44 |
| H. Miscellaneous [2] | | 0.00 |
| TOTAL | | $45,514.55 |

### C. COMPENSATION ALLOWANCE

#### 1. CATEGORY A

The services rendered in this category were pursuant to Westbank's assertions of priority lien status against the Onwentsia property, including litigation against CT & T. A total of 29.85 hours were expended for a request of fees in the amount of $4,087.21. CT & T objects to all fees sought in this category. The Trustee objects to 20.95 hours of those services or $3,083.00 which he alleges were rendered in connection with the production of documents in compliance with subpoenas issued to the Bank by CT & T pursuant to state court litigation. The Trustee objects on the basis that those services are not covered under the Bank's loan documents. CT & T has joined the Trustee in connection with that objection. The Bank responds by stating that the services rendered in response to the subpoena were undertaken in the context of the challenges to the Bank's Trust Deed. Thus, responding to the subpoena was a legitimate exercise in the defense of its lien position.

■ Under subparagraph 4(c) of the Trust Deed, attorneys' fees and costs are included as additional indebtedness when incurred in connection with preparation for the defense of any threatened suit or proceeding which might affect the premises or the security of the Trust Deed, whether or not actually commenced. Hence, the provisions covered the Bank's attorneys' fees incurred in responding to a discovery subpoena issued by CT & T, whether or not the Bank was ever made a party to that action. The services rendered in this category also included review of the loan documentation, attorney-client consultations and related work reviewing pleadings. These services are not excessive or unreasonable. Therefore, the Court will allow compensation in the sum of $4,087.21.

In addition, the Trustee objects to the .25 hour minimum billing increments by the Bank's attorneys. The Bank responds by stating that if some entries include .25 hours or multiples of .25 hours, then it is merely a reflection of the time actually incurred on that date. The Court notes that many entries are in multiples of .10 hours, the minimum billing increment utilized by local custom and practice in this District. Consequently, the potential inflationary effect on the fee application arising from minimum .25 hour increments does

---

**2.** The Bank's voluntary reduction of $1,835.00 for time expended relating to the loan to Fulton Market Cold Storage Company was placed in this category.

not appear to be present and a discount appears unwarranted.

## 2. CATEGORY B

Pursuant to this category, the Bank seeks compensation in the amount of $6,554.10 for work performed in connection with the overall administration of client representation. The Trustee does not object to these fees. CT & T, however, objects to all these fees on the basis that the Bank had a first lien on the property with an equity cushion of approximately $500,-000.00. Thus, CT & T argues such equity cushion did not necessitate the myriad of pleadings, motions and other materials generated in this case. Moreover, CT & T alleges that fees sought for the Fulton Market Cold Storage Company loan are intertwined with the services pertaining to this category so as to make it impossible to delineate between those matters that relate to the Onwentsia property and the matters relevant to the Fulton Market Cold Storage Company loan. The Bank voluntarily reduced its fee request by $1,835.00 for work performed in connection with the Fulton Market Cold Storage Company loan. The Bank states that given the challenges to its secured position, it would have been foolhardy of its counsel not to keep abreast of the current events. In fact, the Bank argues that having incurred only forty-eight hours of legal time was quite efficient.

The Court notes that many of the time entries fail to provide an adequate description of the services rendered. Therefore, the Court hereby disallows those entries as insufficiently described in the sum total of $498.30.[3] Additionally, the Court disallows the entry for TJM on 05/23/89 for 2.50 hours at $148.00 per hour for a total disallowance of $370.00. Only a portion of the entry pertains to a review of the Fulton Market Cold Storage Company documents which is not compensable. The entry lumps together several discrete services, some compensable and others not compensable. This necessitates the disallowance of the entire time expended. Finally, the Court disallows the entry for ROW on 05/31/89 for .80 hours at $179.00 per hour for a disallowance of $143.20. That time expended reviewing the bankruptcy petition is excessive. The Court finds that the remainder of the services rendered were reasonable, necessary and authorized by the loan documents. Accordingly, the Court hereby allows the fees in part in the amount of $5,542.60.

## 3. CATEGORY C

Pursuant to this category, the Bank seeks $1,410.95 for time rendered in the preparation of its proof of claim. The Trustee has not objected to the fees pursuant to this category. CT & T, setting aside the necessity of the Bank filing a proof of claim given its oversecured status, objects to the amount of time expended in this category as excessive insofar as review of the loan documentation is duplicated in other categories. In addition, CT & T claims that some time included preparation of a proof of claim regarding the Fulton Market Cold Storage Company loan. CT & T suggests that not more than fifty percent of the compensation sought is reasonable.

The Court will not penalize the Bank for preparing and filing its proof of claim. However, the time expended and the number of professionals so engaged was excessive for an essentially routine and ministerial administrative task. Three members of the law firm expended over ten hours of time in this category when one member should have been able to do the work in

---

**3.** The following entries are disallowed as inadequate:

| DATE | PROFESSIONAL | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 02/17/89 | ROW | .40 hours | $179.00 | $ 71.60 |
| 02/20/89 | ROW | .40 hours | 179.00 | 71.60 |
| 04/03/89 | ROW | .70 hours | 179.00 | 125.30 |
| 05/02/89 | ROW | 1.20 hours | 179.00 | 214.80 |
| 05/31/89 | SLM | .25 hours | 60.00 | 15.00 |
| TOTAL DISALLOWANCE | | | | $498.30 |

less than half the time. The objection of CT & T is sustained. Therefore, the Court will allow only $700.00.

### 4. CATEGORY D

■ The Bank seeks compensation in this category in the amount of $9,926.17 for time expended in connection with relief from the automatic stay as well as the sale of the Onwentsia property. The Trustee objects to the fees on the basis that a significant equity cushion existed to protect the Bank's position. The Trustee, joined by CT & T, suggests that all time expended in relation to the motion to modify the automatic stay was unnecessary and should not be allowed. The Trustee claims that 25.55 hours or $3,101.60 were expended on the motion to modify the stay and consequently should be disallowed.

The Bank responds by stating that the sale of the Onwentsia property did not close until December 29, 1989, and prior to that date, the Bank did not receive any payments on its one year loan. Additionally, the Bank argues that the uncertainties of the Debtor and the ultimate disposition of the property dictated in favor of the Bank's decision to protect itself by aggressively prosecuting the motion to modify the automatic stay. Moreover, the Bank claims that it would now be unfair to penalize its decision to protect its secured position. Rather, the Bank alleges that the fees incurred were reasonable in light of the circumstances at that point in time. Furthermore, the Bank claims the fees are fully compensable under the provisions of the Trust Deed.

The Court will allow the fees requested over the objections of the Trustee and CT & T. The Court notes that the services rendered relate to numerous court hearings, settlement conferences, and negotiations leading up to the ultimate sale of the Onwentsia property for an amount exceeding the Bank's senior lien claim, thereby proving in real economic sense, for the first time, that the Bank was truly oversecured. The underlying security documents provide for monthly interest payments to the Bank which were not made by the Debtor or by the Trustee. It is not surprising that the Bank moved for relief under section 362 for a lack of adequate protection as it was not receiving the contracted for benefits of its bargain negotiated with the Debtor in 1988, pending maturity of the Trust Deed on December 29, 1989. Payment of hard cash is possibly the best and most substantial form of adequate protection while the ephemeral concept of an equity cushion is often the most speculative, uncertain and questionable form of adequate protection which can evaporate entirely, if not substantially diminish over time, especially in a soft or declining real estate market. This result is further warranted by the fact that no section 506 valuation hearing was ever held nor any determination made prior to or pending the ultimate sale of the Onwentsia property by the Court based upon credible evidence of any equity cushion upon which the Bank could be found adequately protected. Accordingly, the Court allows the fees in full.

### 5. CATEGORY E

In this category, the Bank seeks fees for time expended on the Westbank adversary proceeding in the amount of $14,878.71. CT & T objects to the extent that the fees are billed in .25 hour increments in contravention of the generally accepted practice of .10 hour increments. CT & T suggests a percentage disallowance as a sanction and recommends that it be higher than the Trustee's suggested five percent disallowance in Category A. The Trustee does not object to the fees requested in this category. The Court notes that although some of the entries in this category are billed in multiples of .25 hours, many more of the entries are billed in multiples of .10 hours. Hence, no discount for minimum .25 hour billing is appropriate.

The Court notes that some of the entries fail to provide an adequate description of the services rendered. Thus, the Court disallows those entries as insufficient in

the amount of $304.30.[4] The Court finds that the remainder of the compensation sought is reasonable, necessary and authorized by the loan documents. Consequently, the fees will be allowed in part in the amount of $14,574.41.

## 6. CATEGORY F

The Bank seeks compensation in the sum of $2,867.42 for time rendered coordinating with its mortgage title insurer. Neither the Trustee nor CT & T have objected to the fees. After review of the time entries, the Court hereby finds that the fees are reasonable and necessary. Accordingly, the requested compensation is hereby allowed in full.

## 7. CATEGORY G

■ Pursuant to this category, the Bank seeks $5,789.44 for services rendered responding to grand jury and trial subpoenas duces tecum in the Debtor's criminal proceedings. Both CT & T and the Trustee have objected to all of the fees on the basis that the Bank was under compulsion to comply with grand jury and trial subpoenas and the estate should not bear the cost. The Bank claims that incurring these fees was integral to its legal representation. The Bank argues that these fees were incurred against the back drop of the Westbank adversary proceeding (Category E), where its lien position was challenged. The Bank states that its involvement in the Debtor's criminal trial was focused solely upon the events surrounding the pledge of the Onwentsia property as collateral for the Bank's loan to the Debtor. Therefore, the Bank claims that such representation was within the services contemplated by the loan documents.

The Court sustains the objections of the Trustee and CT & T and disallows the compensation for several reasons. First, all challenges to the Bank's lien claim were made and resolved in the Westbank adversary (Category E), and the adequate protection of its secured position was also dealt with in its motion under section 362 and the sale of the subject property under section 363 (Category D). The Bank is receiving an allowance of its fees and costs for such legal representation on those matters that were reasonably and necessarily incurred to protect its secured position, especially in light of the challenges raised. Those proceedings are expressly contemplated in subparagraph 4(a) of the Trust Deed because in those bankruptcy matters, the Bank was made a necessary party by reason of the Trust Deed securing the underlying indebtedness. Second, no foreclosure of the Onwentsia property was commenced or could be made in conjunction with the criminal proceedings against the Debtor, so the provisions of subparagraph 4(b) are inapplicable.

Likewise, the provisions of subparagraph 4(c) do not apply to the federal criminal prosecution of the Debtor for alleged bankruptcy fraud. That action was not a threatened suit or proceeding which might affect the premises or the Bank's security under the Trust Deed. To the contrary, it was directed solely against the Debtor in personam. The fact that the Bank either voluntarily or under compulsion of subpoena incurred legal fees incidental to the criminal prosecution of the Debtor does not mean that the Debtor's estate is liable therefor. None of the Trust Deed provisions concerning the attorneys' fees are sufficiently broad enough to specifically en-

---

**4.** The following entries are disallowed as inadequate:

| DATE | PROFESSIONAL | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 06/16/89 | ROW | .40 hours | $179.00 | $ 71.60 |
| 07/11/89 | ROW | .40 hours | 179.00 | 71.60 |
| 07/24/89 | ROW | .20 hours | 179.00 | 35.80 |
| 07/25/89 | ROW | .30 hours | 179.00 | 53.70 |
| 07/26/89 | ROW | .40 hours | 179.00 | 71.60 |
| TOTAL DISALLOWANCE | | | | $304.30 |

compass such proceedings. Accordingly, the Court disallows the fees.

### 8. CATEGORY H

Pursuant to this category, the Bank was seeking fees incurred in connection with the Fulton Market Cold Storage Company loan. The Bank, however, has voluntarily reduced its fee request by $1,835.00. The itemized time sheet summaries attached to the Bank's supplement contain no entries for Category H. Hence, the Court makes no allowance of any fees in this category. The Court assumes that the Bank's voluntary reduction disposes entirely of the fees originally sought in this category.

### D. RECAPITULATION OF THE ALLOWED FEES

The following is a list by category of the requested compensation and the amounts allowed:

| CATEGORY | REQUESTED AMOUNT | AMOUNT ALLOWED |
|---|---|---|
| A | $ 4,087.21 | $ 4,087.21 |
| B | 6,554.10 | 5,542.60 |
| C | 1,410.95 | 700.00 |
| D | 9,926.72 | 9,926.72 |
| E | 14,878.71 | 14,574.41 |
| F | 2,867.42 | 2,867.42 |
| G | 5,789.44 | 0.00 |
| H | 0.00 | 0.00 |
| TOTAL | $45,514.55 | $37,698.36 |

### E. REIMBURSEMENT OF EXPENSES

The Applicant bears the burden of establishing that it is entitled to certain expenses which must be fully and clearly described. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987).

The Court will not allow reimbursement for the support staff overtime charge of $12.50 or for the travel expense of $48.50. The Applicant failed to provide the requisite description required for the reimbursement of these expenses. Consequently, the Court hereby allows, in part, reimbursement of expenses in the amount of $1,515.14.

### V. CONCLUSION

For the foregoing reasons, the Court hereby awards Old Kent Bank N.A. f/k/a Illinois Regional Bank N.A., Elmhurst, compensation in the amount of $37,698.36 and reimbursement of expenses in the sum of $1,515.14.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.