**In re Mary Ann HARPER, Debtor.**

**Bankruptcy No. 91–62029.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

July 10, 1992.

---

Susan Goldsmith, Whiting, Ind., for debtor.

Douglas Hannoy, Indianapolis, Ind., for claimant.

## MEMORANDUM OPINION AND ORDER

KENT LINDQUIST, Chief Judge.

### I

#### Statement of Proceedings

This Chapter 13 case comes before the Court on an Objection filed by the Debtor, Mary Ann Harper (hereafter: "Debtor") on February 3, 1992 to the Proof of Claim filed by Lomas Mortgage, U.S.A., Inc. (hereinafter: "Lomas") on January 30, 1991. Lomas as real estate mortgagee of the Debtor claims that the Debtor owes it $2,331.68 in prepetition mortgage arrears payments ($2,242.00 in regular monthly installments, plus $89.68 in late charges), and $2,389.50 in prepetition attorney's fees for a total of $4,721.18.

At a prehearing conference held on March 4, 1992, the parties agreed there were no contested issues of fact, as to the threshold issue in this contested matter, and the same should be decided as an Agreed Case by briefing the issues of law. That issue was whether the amount of attorney's fees awarded to Lomas by the state court in a prepetition default judgment and decree of foreclosure is *res judicata* as to the amount of fees subsequently allowable to Lomas in the Debtor's chapter 13 case pursuant to § 506(b) in the event it is found to be an oversecured creditor. *See*, Order dated March 5, 1992.

On April 2, 1992, Lomas filed its Memorandum of Law, and on April 30, 1992, the Debtor filed her Memorandum of Law.

### II

#### Conclusions of Law and Discussion

The threshold legal issue, stated more precisely, is whether the Bankruptcy Court is required, pursuant to Full Faith and Credit Clause (Article IV, Section 1 of the United States Constitution) [1], and 28 U.S.C. § 1738,[2] to give *res judicata* (claim preclusion) effect to said state court default judgment in determining what attorney's fees

---

1. The Full Faith and Credit Clause of the United States Constitution, Article IV, Section 1 states:

   Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof.

2. The Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, is implemented by 28 U.S.C. § 1738. The relevant part provides as follows:

   The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state.

and expenses form a part of Lomas' allowed secured claim versus the Debtor's Chapter 13 estate pursuant to 11 U.S.C. § 506(b).[3]

Lomas' Memorandum cites *Butner v. United States,* 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–19, 59 L.Ed.2d 136 (1979), in support of its assertion that this Court should insure that Lomas, as mortgagee, is afforded the same protection it would have under State law, if no bankruptcy had ensued. Thus, it follows, according to Lomas, that the Default Judgment for fees should be held to be *res judicata* in any subsequent dispute between Lomas and the Debtor.

*Butner* did not decide the precise issue before the Court. In *Butner,* the Supreme Court held that property interests are created and defined in state law, and unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Thus, whether an agreement creates a lien is dependent on state law. *Matter of Martin Grinding and Machine Works, Inc.,* 793 F.2d 592, 594 (7th Cir.1986), *citing Butner.* Both the Ninth Circuit in *Matter of 268 Ltd.,* 789 F.2d 674, 677 (9th Cir.1986), and the fifth Circuit in *In re Hudson Shipbuilders,* 794 F.2d 1051, 1057–58 (5th Cir.1986), in the context of § 506(b) expressly and correctly rejected the proposition that the Supreme Court's decision in *Butner* requires the Bankruptcy Court to adhere to state law in determining allowable attorney's fees under § 506(b).

Lomas also cites *Heiser v. Woodruff,* 327 U.S. 726, 735, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946). In *Heiser v. Woodruff,* the Supreme Court recognized the general equitable powers of a bankruptcy court, and the two specific grounds on which a proof of claims based upon a prior judgment could be challenged. The two grounds are (1) want of jurisdiction of the Court which rendered it over the person or the parties

or the subject matter of the suit; and (2) procurement of the judgment by fraud. *Id.* 327 U.S. at 736, 66 S.Ct. at 858. While *Heiser* recognized these two equitable grounds upon which a prior judgment could be challenged in a bankruptcy court it also expressly held that the bankruptcy court was still bound by the principles of *res judicata.* *Id.* 327 U.S. at 737, 66 S.Ct. at 858. *See, Kapp v. Naturelle, Inc.,* 611 F.2d 703, 708 (8th Cir.1979) (Default Judgment, collecting cases); *In re Morton,* 43 B.R. 215, 217–18 (Bankr.E.D.N.Y.1984).

▮ Thus, if the creditor's claim is predicated upon a pre-petition, state court judgment the claim may be attacked as invalid in the bankruptcy court on the grounds that the court rendering the judgment did not have jurisdiction over the parties or the subject matter of the suit or that the judgment was the product of fraud, collusion or duress, *see, In re Fazio,* 41 B.R. 865, 867 (Bankr.E.D.Pa.1984), and cases cited therein. However, if the pre-petition state court judgment based on a contract claim is otherwise valid, the court will be bound under the principles of full faith and credit and *res judicata* to allow the judgment to stand.

This Court has no quarrel with the general legal propositions put forth by Lomas based on *Butner* and *Heiser.* However, these two cases are far from dispositive as to the precise legal issue before the Court.

More specifically, Lomas cites *Matter of Lagasse,* 71 B.R. 551, 554 (Bankr.D.Conn. 1987), and *In re Virginia Foundry Co., Inc.,* 9 B.R. 493, 497 (W.D.Va.1981) for the proposition that to the extent that a security agreement provides for attorney's fees, and to the extent that are allowed and reasonable under state law, the fees should be allowed by the bankruptcy court.

Finally, Lomas cites *Werts v. Federal National Mortgage Association,* 48 B.R. 980 (E.D.Pa.1985), where the Court held

---

**3.** Section 506(b) of the title states as follows:
   (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount

of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any *reasonable fees,* costs, or charges *provided for under the agreement under which such claim arose.* (Emphasis supplied)

that fees awarded in a state court default judgment was enforceable in a subsequent bankruptcy proceeding. The *Werts* case is of no assistance to Lomas because it did not implicate the application of § 506(b).

The Debtor in her brief asserts that § 506(b) of the Bankruptcy Code governs an oversecured creditors' right to attorney fees, and that the exclusive federal jurisdiction provided by § 506(b) prevents the bankruptcy court from giving claim preclusive effect to a state court default judgment relating to attorney's fees awarded to the mortgagee for services rendered in connection with a state court mortgage foreclosure suit, *citing, In re Korangy,* 106 B.R. 82 (Bankr.D.Md.1989), and *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir.1986).

This Court has had occasion to address the issue of the *res judicata* (claim preclusive), or collateral estoppel (issue preclusion) effect of a prepetition, state court judgment in a subsequent bankruptcy proceeding on several occasions. Quite often these issues arise in the context of 11 U.S.C. § 523, and require the application of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and *Grogan v. Garner,* 498 U.S. 279, ——, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991). *See, In re McHenry,* 131 B.R. 669 (Bankr. N.D.Ind.1989); *In re Hart,* 130 B.R. 817 (Bankr.N.D.Ind.1991); *In re Diaz,* 120 B.R. 967 (Bankr.N.D.Ind.1989); *In re Tomsic,* 104 B.R. 22 (Bankr.N.D.Ind.1987); *In re Rudd,* 104 B.R. 8 (Bankr.N.D.Ind.1987); and, *In re Guy,* 101 B.R. 961 (Bankr. N.D.Ind.1988); *In re Schlotman,* Case No. 89–60856 (*Schlotman v. Affeld,* Adv. Pro. No. 89–6117) (J. Lindquist, unpub. opin.) (Bankr.N.D.Ind., April 26, 1990); *In re Cifaldi,* Case No. 92–61076, (J. Lindquist, unpub. opin) (Bankr.N.D.Ind. June 25, 1992).

When a bankruptcy court must *generally* give claim preclusive effect to a prior state court judgment was discussed in some detailed in the case of *In re Tomsic,* 104 B.R. at 22, *supra,* where the Court stated:

The Supreme Court in examining the "full faith and credit clause" and 28 U.S.C. § 1738 has stated, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered". *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also, Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

In *Marrese* the Court noted:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered.

*Marrese v. Academy of Orthopaedic Surgeons,* 470 U.S. at 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274.

However, the determination of state issue preclusion rules is a very difficult and complicated matter and as the Chief Justice in his concurring opinion in *Marrese,* stated:

[N]o guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of *res judicata* doctrine will dispose of most cases like this.

*Id.* 470 U.S. at 388, 105 S.Ct. at 1336, 84 L.Ed.2d at 286.

The Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), indicated that only a clear congressional intent contrary to 28 U.S.C. § 1738 will permit a federal court to deny the preclusive effect of a state court judgment. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461 [at 467], 467, 102 S.Ct. at 1890, 72 L.Ed.2d at 271, the Supreme Court stated, "an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal ... Repeals by implication are not favored." The Court gave as an example of clear intent the federal habeas corpus statute, 28 U.S.C. § 2254. The Court in *Kremer* also stated, "§ 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept rules chosen by the state from which the judgment is taken". *Id.*, 456 U.S. at 481, 102 S.Ct. at 1898, 72 L.Ed.2d at 280.

*Id.* 104 B.R. at 33.

■ Accordingly, as a general rule, a bankruptcy court must apply the doctrines of claim preclusion (*res judicata* ), and issue preclusion (collateral estoppel) to prepetition state court judgments in accordance with the principles of The Full Faith and Credit Clause of the United States Constitution, Article IV, Section 1 and 28 U.S.C. § 1738. *See e.g., In re Comer*, 723 F.2d 737, 739 (9th Cir.1984); *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707–08 (8th Cir. 1979); *Matter of Brown*, 56 B.R. 954, 958–59 (Bankr.E.D.Mich.1986); *In re Morton*, 43 B.R. 215, 217–18 (Bankr.E.D.N.Y.1984); *In re Eagson*, 37 B.R. 471, 476–77 + N. 23 (Bankr.E.D.Pa.1984); *In re Novak*, 37 B.R. 31, 32–33 (Bankr.D.Conn.1983); *Matter of Bloomer*, 32 B.R. 25, 26 (Bankr.W.D.Mich. 1983); *In re Sapphire Investments*, 27 B.R. 56, 58 (Bankr.D.Ariz.1983); *In re KDI Corp.*, 14 B.R. 350, 352–54 (Bankr.S.D.Ohio 1981).

If this Court were required in this case to apply Indiana law as to the claim preclusive effect of a prepetition default judg-ment rendered versus the Debtor in the State of Indiana, it would follow that this Court would have to afford claim preclusive effect to the Default Judgment upon which Lomas has asserted its claim for fees pursuant to § 506(b).

The Court in *State Exchange Bank of Culver v. Teague*, 495 N.E.2d 262 (Ind.App. 3rd Dist.1986) summarized the elements of *res judicata* in the State of Indiana as follows:

The Indiana courts have consistently required the presence of four elements to merit the application of *res judicata* :

"The basic elements of *res judicata* are four-fold: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter now in issue was, or might have been, determined in the former suit; (3) the particular controversy adjudicated in the former action must have been between the parties to the present suit; and (4) judgment in the former suit must have been rendered on the merits. *Middlekamp [Middelkamp] v. Hanewich* (1977), 173 Ind. App. 571, 364 N.E.2d 1024, 1033; *Crown Point School Corp. v. Richards* (1973), 154 Ind.App. 545, 549, 290 N.E.2d 449, 452; *Wright v. Kinnard* (1970), 147 Ind. App. 484, 488, 262 N.E.2d 196, 199–200."

\* \* \* \* \* \*

(A default judgment is a judgment on the merits for purposes of *res judicata.* *Patterson v. State* (1859) 12 Ind. 86.,).

*Id.* 495 N.E.2d at 266 (Emphasis supplied).

*The State Exchange Bank* Court also stated as follows as to the *res judicata* effect of a default judgment in Indiana:

[w]here a default judgment is entered, only those issues presented by the complaint can be deemed concluded; the defaulting party cannot be charged with admitting matters not within the complaint by his default. *Pence v. Long*, (1906), 38 Ind.App. 63, 77 N.E. 961; 17 I.L.E. *Judgment,* Sec. 375, at 412 (1959);

47 Am.Jur.2d *Judgments*, Sec. 1202 at 216 (1969).

*Id.* 495 N.E.2d at 267 (Footnote omitted).

*Collier on Bankruptcy* provides some helpful insight on the issue before the Court. Collier states:

The allowance of attorneys' fees pursuant to section 506(b) has also raised interpretive questions with respect to which courts have differed. The two principal questions raised are whether state law or federal law is determinative of (1) validity or provisions providing for payment of attorneys' fees for purposes of section 506(b), and (2) the standards for determining reasonableness of such fees.

With respect to the first issue, one group of cases holds that federal law is applicable in determining the validity of provisions for payment of attorneys' fees, another group of cases holds that state law is to be applied and there is even a district court decision which appears to hold that both federal and state law may apply. In view of the language of section 506(b) and the legislative history to the section, the split in authority is easily understandable.

Section 506(b) refers only to "fees." As enacted, it makes no express mention of attorneys' fees or what law is to be applied in determining the validity of enforceability of contractual provisions relating to attorneys' fees (or, for that matter, interest, other fees, costs or charges). Thus, in the absence of any further examination, it might seem proper to assume that state law should be applied to determine allowance of fee claims as is the case under section 502(b)(1) for most claims. However, inasmuch as section 506(b) appears to provide for allowance of such claims to secured claimant without any qualification as to validity or enforceability, at least enough of an interpretive question is raised as to justify reviewing the legislative history.

The H.R. 8200 version of section 506(b) would have applied state law to determine the validity of attorneys' fees claims. The S.2266 version was silent as to applicable law. It was the S. 2266 version that was ultimately enacted. However, the latest pronouncement by both House and Senate prior to enactment of the Code does clearly evidence an intent to permit enforcement of attorneys' fees provisions even in the face of state law restrictions:

"Section 506(b) of the House amendment adopts language contained in the Senate amendment and rejects language contained in H.R. 8200 as passed by the House. If the security agreement between the parties provides for attorneys' fees, it will be enforceable under title II [sic], *notwithstanding contrary law,* and is recoverable from the collateral after any recovery under section 506(c). (Emphasis supplied)."

Thus, *the better view would appear to be that the validity of such provisions should be determined by federal law (i.e., section 506(b)).* This view has the benefit of eliminating questions of compliance with state law notice requirements in the context of bankruptcy cases, where such notices do not serve the purpose for which they are intended and may ultimately lead to such further issues as whether the automatic stay prohibits the giving of such notices.

In contrast to the validity issue, *the courts have been far more uniform in holding that they have inherent power to determine the reasonableness of the amount of any attorneys' fees to be allowed under section 506(b), and that reasonableness is to be determined in accordance with federal standards.* The bankruptcy court will generally require the party seeking allowance of attorneys' fees to carry the burden of demonstrating reasonableness by providing a detailed description of the services rendered, supporting documentation or other evidence prior to making a determination or other evidence prior to making a determination thereon. The bankruptcy court may also inquire into whether the services rendered are within the scope of the services covered by the attorneys' fees provision of the applicable agree-

ment and whether the rendition of the services in question was reasonably required under the circumstances.

The policy as encompassed in section 506(b) of giving an adequately secured creditor the benefit of his bargain in regard to interest, fees, costs and charges is applicable both to the relationship between the secured creditor and the debtor, as described above, and to the relationship between creditors secured by interests in the same property. Thus, a senior secured creditor is entitled to receive postpetition interest and fees, even if the allowance of such amounts is to the detriment of a junior secured creditor.

3 *Collier on Bankruptcy*, ¶ 506.05 (pp. 506–47–53) (L. King 15th ed.) (footnotes omitted).

■■■ The court agrees with *Colliers* that the better view is that not only should the validity and enforceability of such agreements for attorney's fees be determined by federal law, i.e. § 506(b), rather than state law, but that the reasonableness of any attorney's fees awarded pursuant to any such agreement is determined by a federal standard. The court's conclusion is supported by similar holdings in the Fourth, Fifth and Ninth Circuits. *See, Unsecured Creditors' Committee v. Walter E. Heller & Company Southeast, Inc.,* 768 F.2d 580, 585 (4th Cir.1985); *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051, 1056–58 (5th Cir.1986); *In re 268, Ltd.,* 789 F.2d 674, 676–77 (9th Cir.1986).

*Heller, supra,* provided an exhaustive analysis of the legislative history of § 506(b), and concluded that Congress intended federal law should govern the enforcement of attorneys' fee provisions notwithstanding contrary state law, and that Congress intended to abrogate the pre-existing requirement that attorneys' fee agreements are enforceable only in accordance with state law. Accordingly, in *Heller,* the oversecured creditor was awarded a reasonable attorney's fee even though a North Carolina statute provided that attorney's fee agreements are only enforceable after the creditor gives a five day notice to

the Debtor after default, and no such notice had been given.

In *268 Ltd., supra,* although there were funds available to pay the contractually agreed fee of 5%, or $197,500.00, based on the remaining balance of a note, the bankruptcy court, relying on § 506(b), allowed only $20,000 as the amount it deemed reasonable. The Ninth Circuit affirmed the award of the bankruptcy court, and held that § 506(b) preempts state law governing attorneys' fees as part of a secured claim, and the bankruptcy court correctly engaged in an independent inquiry as to the reasonableness of the fees. The Court expressly rejected the creditor's argument that the bankruptcy court should have enforced the contractual fee provision if it was valid under governing state law. The Court noted that in § 502(b)(1) relating to disallowance of claims Congress makes explicit reference to state law while § 506(b) does not. *Id.* 789 F.2d at 677. The Court in *268 Ltd.* stated that enforceability and reasonableness are not coterminous. The Court could not agree that by requiring that contractual fee agreements be reasonable that Congress only meant that they must be enforceable under the law governing the enforcement of the contract, and to give § 506(b)'s limitation meaning, it must be read to provide an *ex post* reasonableness determination by the bankruptcy court. *Id.,* 789 F.2d at 676.

In *Hudson, supra,* the bankruptcy court held that federal law controlled as to the proper amount of attorney's fees to be permitted in connection with § 506(b), and awarded the creditor $30,000.00 in fees, although the attorney's fees provision in the note in question provided for an addition of 15% to the remaining principal as attorney fees upon default. The Fifth Circuit affirmed, and held that Congress has clearly chosen to exercise its broad power to establish a uniform rule under § 506(b), and that the paramount federal interest dictates that federal law shall govern. 794 F.2d at 1058 & n. 6.

It should also be observed that the United States Supreme Court in *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109

S.Ct. 1026, 103 L.Ed.2d 290 (1989), in the context of whether a nonconsensual, oversecured lien holder was entitled to postpetition interest pursuant to § 506(b), held that recovery of postpetition interest is unqualified. 109 S.Ct. at 1030. However, recovery of fees, costs, and charges, is allowed "only if they are reasonable and provided for in the agreement under which the claim arose." *Id.*

*Heller, Hudson,* and *268 Ltd.* are in accord with the majority of lower courts who have held that federal law should be the measure of "reasonableness" called for in 11 U.S.C. § 506(b). *See e.g., In re Stoecker,* 114 B.R. 980, 983 (Bankr.N.D.Ill.1990); *In re A.J. Lane & Co., Inc.,* 113 B.R. 821, 823–25 (Bankr.D.Mass.1990); *In re Korangy,* 106 B.R. 82, 85 (Bankr.D.Md.1989); *In re Standard Building Associates, Ltd.,* 85 B.R. 644, 647–48 (Bankr.N.D.Ga.1988); *In re Marquis Associates,* 81 B.R. 576, 578 (9th Cir.B.A.P.1987); *In re McKillips,* 81 B.R. 454, 456 (Bankr.N.D. Ill.1987); *In re Wonder Corp. of America,* 72 B.R. 580, 587–88 (Bankr.D.Conn.1987), *aff'd.* 82 B.R. 186, (Bankr.D.Conn.1988); *In re B & W Management, Inc.,* 63 B.R. 395, 401 (Bankr.D.D.C.1986); *In re David N. Rausch, Inc.,* 41 B.R. 833–34 (Bankr.D.S.D. 1984); *Longwell v. Banco Mortgage Co.,* 38 B.R. 709, 711 (N.D.Ohio 1984); *In re American Metals Corp.,* 31 B.R. 229, 234–35 (Bankr.D.Kan.1983); *Matter of Elmwood Farm, Inc.,* 19 B.R. 338, 341 (Bankr. S.D.N.Y.1982); *In re Scarboro,* 13 B.R. 439, 442 (M.D.Ga.1981); *In re Carey,* 8 B.R. 1000, 1002–04 (Bankr.S.D.Calif.1981). *See also,* Carlson, *Oversecured Creditors Under Bankruptcy Code Section 506(b): The Limits of Prepetition Interest, Attorney's Fees and Collection Expenses,* 7 Bankr.Dev.L.J. 381 (1990).

Thus, this court will apply federal law as to the reasonableness of the fees requested by Lomas regardless of the language of the note or the mortgage instrument securing the same, or what might be allowable by the state courts pursuant to applicable state substantive law.

■ This is true even if the creditor's claim for attorneys' fees has been reduced to judgment in a state court action by the secured creditor to enforce or protect its lien rights prior to the debtor's petition in bankruptcy as is the case here. As stated by the court in *In re Korangy,* 106 B.R. 82, *supra:*

Section 506(b) requires the bankruptcy court to assess the reasonableness of fees under an attorney fee agreement. Section 506(b) is not alone in mandating the bankruptcy court to make such an assessment; 28 U.S.C. § 157(b)(2) makes the assessment a core proceeding. Preservation of creditor priority is an axiom of bankruptcy policy. *E.G., In re Quanta Resources Corp.,* 739 F.2d 912, 915 (3d Cir.1984); *affirmed, Midlantic Nat'l. Bank v. New Jersey Dept. of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Oversight by the bankruptcy court to ensure fairness to all creditors is a corollary to that principle. Where a secured creditor has filed a proof of claim, as Great Western has done here, the creditor's claim for attorney fees is properly before the bankruptcy court. *Hudson Shipbuilders,* 794 F.2d at 1055. Reasonableness of fees must be assessed by federal rather than state standards. *E.G., In re Wonder Corp. of America,* 82 B.R. 186 (D.Conn. 1988).

This case presents a further issue as to the *res judicata* effects on this court of the Florida court's determinations regarding reasonableness.

\*     \*     \*     \*     \*     \*

This court believes that any award of attorney fees was not necessary to the foreclosure judgment, and thus the award is not *res judicata. See generally,* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4421 (1981). However, this court need not reach that point since the exclusive federal jurisdiction under § 506(b) prevents any preclusive effect on this court by the Florida court's decisions. 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4470 (1981).

In *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105

S.Ct. 1327, 84 L.Ed.2d 274 (1985), which involved an antitrust claim, the Supreme Court directly addressed the preclusive effect of state court judgments on claims within exclusive federal jurisdiction. The preclusion argument is founded on 28 U.S.C. § 1738 granting state court judgments full faith and credit in federal courts. The *Marrese* court provided the following approach to § 1738:

> More generally, *Kremer [v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)] indicates that § 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment. *Cf. Haring v. Prosise,* 462 U.S. 306, 324, and n. 8, 103 S.Ct. 2368, 2373, and n. 8, 76 L.Ed.2d 595 (1983); Smith, Full Faith and Credit and Section 1983: A Reappraisal, 63 N.C.L. Rev. 59, 110–111 (1984). The Court's analysis in *Kremer* began with the finding that state law would in fact bar relitigation of the discrimination issue decided in the earlier state proceedings. 456 U.S., at 466–467, 102 S.Ct., at 1889–1890. That finding implied that the plaintiff could not relitigate the same issue in federal court unless some exception to § 1738 applied. *Ibid. Kremer* observed that "an exception to § 1738 will not be recognized unless a later statute contains an express or implied repeal." *Id.,* at 468, 102 S.Ct., at 1890; *see also, Allen v. McCurry, supra,* 449 U.S., at 99, 101 S.Ct., at 417. Title VII does not expressly repeal § 1738, and the Court concluded that the statutory provisions and legislative history do not support a finding of implied repeal. 456 U.S., at 476, 102 S.Ct., at 1894. We conclude that the basic approach adopted in *Kremer* applies in a lawsuit involving a claim within the exclusive jurisdiction of the federal courts.

Assuming that the Florida court's determination of reasonableness would bar relitigation of that issue in Florida, § 506(b) impliedly excepts reasonableness determinations from § 1738. Its legislative history reveals that Congress consciously intended to abrogate the applicability of state law to § 506(b). *Hudson Shipbuilders,* 794 F.2d at 1056–57; *268,* 789 F.2d at 676–77; *Heller,* 768 F.2d at 585. Thus § 506(b) constitutes a repeal of § 1738, and the Florida court judgments do not preclude this court from determining the reasonableness of Great Western's attorney fees.

*Id.* 106 B.R. at 85–86.

This Court agrees with the analysis and result reached by the Court in *Korangy.* Because § 506(b) mandates that the Bankruptcy Court apply exclusively a federal standard as to the reasonableness of attorney's fees allowable to the oversecured creditors arising out of an agreement, this Court is not required to give full faith and credit to a prepetition state court judgment that awarded fees to an oversecured creditor, as an implied exception to 28 U.S.C. § 1738.

Quite often the debtor-defendant in the state court action has neither the incentive, nor the resources, to defend an action by a secured creditor to realize on its security, and, thus, often does not seriously contest the reasonableness of any attorney's fees and expenses that may be prayed for by secured party. In addition, it is common knowledge that when a default judgment is entered in a foreclosure action in a state court proceeding, the state court will be less than exacting in granting fees. Often the fees awarded have little or no relationship to the actual amount of time expended by secured creditor's counsel in prosecuting the action, or the hourly rate actually charged by him to his client, as the state court's inquiry on the issue is often superficial at best. This is not to be critical of the state court, for when a judgment entered by default, the interests of the third-party unsecured creditors are seldom implicated as in a chapter 13 case. However, such a default judgment which contains an excessive fee award can have a considerable impact on a subsequent chapter 13 case filed by the defaulting mortgagor, if it must be given *res judicata* effect by the bankruptcy court. First, it might effect

the feasibility of the Debtor's plan, i.e. the ability to fund the plan, if the mortgagee is found to be oversecured pursuant to § 506(a), and the attorney's fees awarded in any state court judgment would form a part of the mortgagee's claim pursuant to § 506(b). Secondly, if such a default judgment must be given *res judicata* effect, to the extent that the fees and expenses awarded to the mortgagee in the state court default judgment are excessive, and thus unreasonable, those fees and expenses would *pro tanto* reduce the dividend payable to general unsecured creditors in the subsequent bankruptcy case. Thus, there are often important considerations present in a subsequent chapter 13 case that are not present in the state court foreclosure proceeding. It should also be observed that § 506(b) creates a federal right in oversecured creditors that has no counterpart in state law. That is, this right of a mortgagee to fees against the Debtor's estate, if oversecured, does not have its source in state law.

Of course, this Court's conclusion that a state court default judgment, which includes attorney's fees, does not have *res judicata* effect for the purposes of a subsequent § 506(b) determination by the bankruptcy court is a two-edged sword. The Bankruptcy Court may award fees pursuant to § 506(b) for legal services in excess of those found in the state court default judgment if those services are found to be necessary and reasonable. In addition, if state law requires a notice before fees can be awarded, or a state statute or the agreement itself limits the amount of attorney's fees that can be awarded, the Court may still award a reasonable attorney's fee under § 506(b), if based on an agreement. In addition, fees are allowable by the bankruptcy court to an oversecured creditor for *post* petition services pursuant to § 506(b). Because § 506(b) postpetition fees do not constitute part of the secured creditor's claim "as of the date of the filing of the petition" under § 502(b), the allowance of reasonable postpetition attorney's fees is not dependent on the normal process of allowance of claims under § 502 which might otherwise implicate state law.

Thus, attorney's fees may be awarded to an oversecured creditor for *post* petition services pursuant to § 506(b) even if those fees are not expressly covered by the agreement or allowable under state law. Accordingly, fees may be awarded for post-petition legal services rendered to an oversecured creditor in stay relief proceedings, or in objections to confirmation of a plan, even though they are not expressly provided for in the agreement, providing for the payment of fees.

It is therefore,

ORDERED, that this Court is not bound by the doctrine of *res judicata* as to a prepetition state court default judgment that awards attorney's fees to an oversecured creditor, in making its determination under 11 U.S.C. § 506(b) as to what attorney's fees are to be allowed to any such oversecured creditor. And it is further,

ORDERED, that this contested matter is set down for a telephonic prehearing conference on July 29, 1992, at 11:30 o'clock A.M. on the remaining issues to be decided.